Salem Building Supply Co., Inc. v. J.B.L. Construction Co., Inc.

SALEM BUILDING SUPPLY CO., INC. *vs.* J.B.L. CONSTRUCTION CO., INC., & another.[1]

Suffolk. April 15, 1980. — August 4, 1980.

Present: HALE, C.J., GREANEY, & DREBEN, JJ.

*Bond,* Public works. *Massachusetts Housing Finance Agency. Damages,* Counsel fees. *Practice, Civil,* Summary judgment. *Agency,* Scope of authority or employment. *Words,* "Public works."

The provisions of G. L. c. 149, § 29, were not applicable to the construction of a housing project owned by a nonprofit corporation and financed through the Massachusetts Housing Finance Agency, and, therefore, a motion for counsel fees by a claimant under a bond pursuant to § 29 was erroneously allowed. [361-363]

In an action by a supplier on a construction project to recover under the principal contractor's bond, it was error to enter summary judgment in a certain amount for the plaintiff where the affidavits disclosed a genuine issue of material fact with respect to whether the plaintiff had complied with the notice provisions of the bond and where nothing in the record established the amount of any debt which might be owed to the plaintiff. [363-366]

CIVIL ACTION commenced in the Superior Court on April 22, 1977.

The case was heard by *Ford,* J., on a motion for summary judgment.

A motion for counsel fees was heard by *Paquet,* J.

*Thomas J. Urbelis* for the defendants.

*Kevin P. Curry* (*Lewis Soule* with him) for the plaintiff.

HALE, C.J. The plaintiff in this action was the supplier of dry wall and other materials to W. J. Martinoli,[2] a subcontractor on an apartment complex in Lincoln. The de-

---

[1] United Pacific Insurance Company.

[2] Martinoli, a defendant in this action, is not a party to the appeal.

fendants, J.B.L. Construction Co., Inc. (J.B.L.), the principal contractor, and United Pacific Insurance Company (United Pacific), as surety, executed a labor and material bond for the project. The plaintiff claims the right to recover under the bond for the unpaid balance of its account with Martinoli. Upon the plaintiff's motion for summary judgment the judge entered judgment for the plaintiff in the amount of $46,881.39. After a later hearing on the plaintiff's motion for counsel fees, judgment was entered for the plaintiff for an additional $13,200. The defendants appeal from each judgment.

In allowing the plaintiff's motion for summary judgment, the judge ruled that the bond had been given as security for payment of the plaintiff's claim under G. L. c. 149, § 29. Section 29, as appearing in St. 1957, c. 682, § 2, sets out bond requirements and procedures for "[o]fficers or agents contracting in behalf of the commonwealth or in behalf of any county, city, town, district or other political subdivision of the commmonwealth or other public instrumentality for the construction, reconstruction, alteration, remodeling, repair or demolition of public buildings or other public works . . . ." The judge must therefore have concluded that the Lincoln apartment project was public. That conclusion, if correct, would have two consequences in this case. First, the provision of § 29 stating that a judgment in favor of a claimant shall include reasonable legal fees would apply. Second, the notice provisions of § 29 would apply, which, as we explain below, would eliminate the dispute as to whether the plaintiff complied with the notice provisions of the bond itself.

There is no dispute in the parties' affidavits about the basic character of the Lincoln apartment project. The owner is the Lincoln Homes Corp. (Lincoln), a nonprofit corporation, and the project is financed through the Massachusetts Housing Finance Agency. The dispute is whether a project such as this is a "public building" or other "public work." We do not view this as an issue of fact but rather as a question of law which can appropriately be decided on summary judgment.

The Massachusetts Housing Finance Agency (MFHA) was established by St. 1966, c. 708, § 3. It is empowered, among other things, to make mortgage loans at favorable rates to qualified developers of housing projects in which at least one-quarter of the tenants will be "low income" and the other tenants will be of moderate income. St. 1966, c. 708, § 4(*a*), as amended by St. 1974, c. 689, § 1; § 5, as amended by St. 1968, c. 709, § 2, and St. 1970, c. 855, §§ 3, 5; and § 6, as amended by St. 1970, c. 855, § 6. *Massachusetts Housing Fin. Agency* v. *New England Merchants Natl. Bank,* 356 Mass. 202, 209 (1969). MHFA is authorized to act only as mortgagee in such a project and is not empowered to develop, own, maintain or control the project unless it is necessary to protect its loan interest. St. 1966, c. 708, § 4(*h*). Such is not alleged to be the case here. Nothing in this statutory scheme would render a private development financed by MHFA, such as the one at issue here, a public building or public work, or make Lincoln an agent or servant of a public instrumentality, and thus bring the project within the reach of G. L. c. 149, § 29. See *V. Petrillo & Son* v. *American Constr. Co.,* 148 N.J. Super. 1, 6-7 (1977). Compare *Andover Consultants, Inc.* v. *Lawrence, ante* 156, 157-161 (1980). Even the "declaration of public necessity," St. 1966, c. 708, § 2, makes clear that the statute is designed to encourage *private enterprise* to build needed housing. The private owner of an MHFA financed project can be a nonprofit corporation, as is Lincoln, or can be a corporation, partnership, or other form of venture organized for profit. St. 1966, c. 708, § 5(*b*).

Because an MHFA financed housing project does not fall within the general terms of G. L. c. 149, § 29, the Legislature would have had to provide expressly that § 29 apply to such a project. Compare *Johnson-Foster Co.* v. *D'Amore Constr. Co.,* 314 Mass. 416, 419 (1943) (without express legislative provision [later enacted] G. L. c. 149, § 29, did not apply to housing projects developed by a housing authority). In fact, § 5(*a*) of St. 1966, c. 708, as originally enacted, did make G. L. c. 149, § 29, applicable "to all construction and

alteration projects which are the subject of a mortgage loan by the MHFA." Section 5(*a*) was amended, however, by St. 1970, c. 855, § 3, and the reference to G. L. c. 149, § 29, was omitted. Statute 1966, c. 708, § 5(*a*), as so amended and amended by St. 1971, c. 1030, makes other provisions of G. L. c. 149 applicable to MHFA financed projects but now includes a substitute security provision, requiring a bond or equivalent escrow arrangement "to assure payment out of the construction loan funds for all labor and materials for which claimants would have been able to claim a mechanic's lien if the claimants had complied with the provisions of chapter two hundred and fifty-four." We can reach no conclusion other than that the Legislature intended that G. L. c. 149, § 29, no longer apply to a housing project such as the one planned by Lincoln.

As G. L. c. 149, § 29, does not apply, the plaintiff's motion for counsel fees pursuant to that section was erroneously allowed. No other basis for the award of counsel fees has been suggested. See *Donaldson* v. *Boston Herald-Traveler Corp.*, 347 Mass. 274, 280-281 (1964); *Chartrand* v. *Riley*, 354 Mass. 242, 243-245 (1968); *United Tool and Industrial Supply Co.* v. *Torrisi*, 359 Mass. 197, 197-198 (1971); *Bournewood Hosp., Inc.* v. *Massachusetts Comm. Against Discrimination*, 371 Mass. 303, 311-313 (1976).

If the bond had been subject to G. L. c. 149, § 29, the notice provisions of that section would have applied, and the plaintiff would have been required to give notice of its claim only to the contractor principal. However, because § 29 did not apply, the plaintiff's rights under the bond are to be determined by the terms of the bond itself. Under those terms, the plaintiff was required to give notice to two of three named parties: the principal (J.B.L.), the owner (Lincoln) and the surety (United Pacific).

Included in the record appendix are three affidavits filed by the plaintiff in support of its motion for summary judgment which seek to establish proper notice. In one of them the plaintiff's attorney states that he sent written notice to J.B.L. and to "Kent Corporation, agent for owner Lincoln

Homes Corporation." In another, Lincoln's president describes Lincoln's relationship with Kent Corporation (Kent): "On or about September 16, 1975, the Lincoln Foundation retained Kent . . . to act as management consultants in connection with Lincoln Woods. Kent was hired because of difficulties that arose between the Lincoln Foundation and J.B.L. . . ., the prime contractor. Kent's function was to coordinate the activities and interests of J.B.L. and the architect, including, among other things, working with the sub-contractors and suppliers to insure the completion of the project. In this connection, Kent was an agent of the Lincoln Foundation." In the third affidavit, an employee of Kent states that Kent was employed by Lincoln to "represent and advise" Lincoln during construction of Lincoln Woods. He also states that Kent was hired because of problems between Lincoln and J.B.L. and that "Kent's function was to supervise and represent the owner" during construction. He asserts that on April 20, 1976, he received a copy of the plaintiff's claim letter "on behalf of" Lincoln, and that on the same day he forwarded the letter to Lincoln's president.

An affidavit filed in opposition to the motion for summary judgment by the president of J.B.L. asserted that "[t]he Kent Corporation was a construction management consultant firm on the Project on a per-diem basis. Agent for the owners on the Project was [the] architect, Sert Jackson and Associates of Cambridge, Massachusetts."

In analyzing the record on summary judgment, we look first to the moving party's affidavits to see whether he has satisfied his burden to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553-554 (1976). Here the question has been narrowed to whether the plaintiff has shown that there is no genuine issue of material fact concerning the existence and scope of Kent's agency.

Receipt of notice by Kent would be considered notice to Lincoln if Kent was Lincoln's agent, acting within the scope

of its authority and in reference to a matter to which its authority extended. *Jamrog* v. *H.L. Handy Co.*, 284 Mass. 195, 199-200 (1933). The authority of an agent is a question of fact, depending upon the inferences to be drawn from a variety of circumstances. *Costonis* v. *Medford Housing Authy.*, 343 Mass. 108, 113 (1961). *Baldwin's Steel Erection Co.* v. *Champy Constr. Co.*, 353 Mass. 711, 715 (1968). In evaluating the plaintiff's affidavits, we view the inferences which may be drawn from the facts alleged therein in the light most favorable to the defendants, the parties opposing summary judgment. *Hub Associates* v. *Goode*, 357 Mass. 449, 451 (1970). *McMahon* v. *M & D Builders, Inc.*, 360 Mass. 54, 56 (1971). *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 756, 763 (1976). *United States* v. *Diebold, Inc.*, 369 U.S. 654, 655 (1962). In so viewing the plaintiff's affidavits, we conclude that although a fact finder would be justified in drawing the inference that Kent was authorized to receive notice for Lincoln, it could also be inferred that Kent's authority is an issue of material fact which precludes a determination on summary judgment that notice was properly given under the bond.[3] Stated otherwise, the facts alleged in the affidavits may warrant a finding of agency but do not require such a finding as a matter of law. Mass. R.Civ.P. 56(c).

It was also error to decide on summary judgment that Martinoli's liability to the plaintiff was in the amount of $46,881.39. Nothing in the record before the special master or the judge, as reflected in the record appendix filed by the plaintiff, establishes the amount of any debt which might be owed to the plaintiff. Although the briefs contain references to another action in Suffolk Superior Court which, it is claimed, may have settled the amount of the plaintiff's claim, there is no indication that the judge was made aware

---

[3] Because the plaintiff failed to meet its burden to show the absence of a triable issue, we need not consider whether the affidavit of J.B.L.'s president, filed by the defendants, was sufficiently specific to establish the existence of a genuine issue of material fact. See *Community Natl. Bank* v. *Dawes*, 369 Mass. at 554.

of that action, and it is not properly before us. The effect of any such action, if relevant and properly raised, may be considered in further proceedings in the Superior Court.

The judgments are reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*