JOHN HARDY, JR. vs. GEORGE BARAN & another.[1]

Middlesex. November 6, 1980. — December 23, 1980.

Present: BROWN, DREBEN, & NOLAN, JJ.

*Practice, Civil,* Summary judgment. *Option.*

In an action for specific performance of an agreement to convey property,
a judge erred in entering summary judgment for the defendants where
there was a genuine issue of material fact with respect to whether the
plaintiff had properly given notice of his intent to exercise an option to
purchase the premises. [82-86]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 16, 1979.

The case was heard by *Ronan, J.,* on a motion for sum-
mary judgment.

*Edward P. McDuffee* for the plaintiff.

*Willard Ide Shattuck, Jr.,* for the defendants.

DREBEN, J. The plaintiff rented a house in Pepperell and,
under the lease, was given an option to purchase the prem-
ises. Despite the plaintiff's attempt to exercise the option,
the defendants refused to convey the property, and the
plaintiff brought this action for specific performance. The
defendants moved for summary judgment, urging that the
plaintiff had not unconditionally exercised the option, but,
at most, had tendered a counteroffer which was never ac-
cepted. Affidavits were filed, and the trial judge entered
summary judgment for the defendants. We reverse.

The terms of the option are set forth in the margin.[2]
They required the tenant to notify the defendants in writing

---

[1] Lucille Baran.

[2] The lease dated October 25, 1976, provided: "The Lessors hereby
grant the Lessee an option and right to purchase the demised premises at

of his intent to exercise the option "prior to 60 days before the expiration of this lease," that is, sixty days before October 25, 1978. The pleadings, affidavits and supporting documents submitted on behalf of the plaintiff[3] allege the following facts, which were not controverted by the defendants. Ernest B. Sheldon, a real estate broker, was hired by the defendants as a broker for the purpose of selling the property. On their behalf, he drafted the lease in 1976. In January 1978, Sheldon notified the defendants that "[the plaintiff] wished to exercise his option and prepared a purchase and sale agreement in accordance with the parties' wishes" which included the following provision:

> "This agreement constitutes written notice of intent to exercise the buyer's option to purchase contained in a lease agreement between the parties dated October 25, 1976 and by agreement conveyance is to take place according to this contract which incorporates and merges all of the rights set forth in said lease as they apply to either party."

The agreement was sent to the defendants on January 17, 1978, more than nine months before the expiration of the lease. In his cover letter, Sheldon pointed out some of the substantive provisions of the agreement, including the fact that the agreement was contingent upon the buyer's being able to obtain a mortgage for $29,000.[4] Sheldon's affidavit

---

the expiration of this lease for the sum of $29,000. Notice in writing to the Lessors by the Lessee of its intent to exercise this option must be delivered to the Lessors prior to 60 days before the expiration of this lease, otherwise the option hereby granted to the Lessee shall be and stand cancelled. If notice of exercise of its option by the Lessee is received by the Lessors, conveyance of the property to the Lessee will be made within 30 days of the expiration of this lease upon payment of the agreed purchase price."

[3] We find it unnecessary to consider the affidavit submitted in support of the plaintiff's motion for reconsideration of the defendants' motion for summary judgment, and we only consider the material submitted to the judge prior to his initial ruling.

[4] The agreement drawn by Sheldon in January stated the agreed value of the premises was $38,000, "$9,000 of which have been paid in goods and

alleged that the defendants refused to sign, that he had conversations with them and "on their instructions" prepared a second and then a third agreement, each of which they also refused to sign. Thereafter, Sheldon advised the defendants that the plaintiff had obtained financing pending availability of funds and was told "this was acceptable" and that the defendants "would go through with the sale" and would deliver the signed agreements. The defendants did not sign the agreements, but instead left at Sheldon's office on January 25, 1979, a copy of a listing of the property with another broker at a price of $39,500.[5]

Viewing the affidavits filed by the parties and the inferences which may be drawn therefrom "in the light most favorable" to the party opposing summary judgment, *Hub Associates* v. *Goode*, 357 Mass. 449, 451 (1970); *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 763 (1976); *Salem Bldg. Supply Co.* v. *J.B.L. Constr. Co.*, 10 Mass. App. Ct. 360, 365 (1980); we conclude that the defendants have not met the burden of a party moving for summary judgment under Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). They have not shown that "there is no genuine issue of material fact and that [they are] entitled, as matter of law, to a judgment." *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 554 (1976).

The defendants' affidavit, when supplemented in its interstices by the affidavits filed by the plaintiff, shows that whether the plaintiff gave proper notice of his intent to exercise the option cannot be settled on this bare record. See *Ames* v. *B.C. Ames Co.*, 335 Mass. 511, 515 (1957) (finding that no counteroffer intended); *Rousseau* v. *Mesite*, 355

---

services." Sheldon subsequently drew two other agreements, each of which contained a statement that improvements of $9,000 were made by the buyer.

[5] The option price was $29,000, and the following statement was contained in the lease: "It is agreed by the parties that money and labor spent by the Lessee on the premises is totally the Lessee's expense but that consideration by the Lessors of these expenses has been considered in setting the purchase option price."

Mass. 567, 570 (1969) (whether it was intention that agreement was to take effect only if Mesite could satisfy his creditors was a question of fact). The resolution of that basic issue depends on the factual question whether Sheldon had at least apparent authority to accept the plaintiff's notice of intent to exercise the option or to draft the notice. See *Johnson* v. *Kelley*, 342 Mass. 724, 727 (1961). See also *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 725-726 (1979). The defendants did not deny Sheldon's agency, and, indeed, in their answer, admitted that he was their agent. The scope of his agency is, however, not clear. The question of the implied or apparent authority of Sheldon is one of fact and "depends upon the inferences to be drawn from a variety of circumstances" relating to his conduct and "whether the circumstances are such as to warrant" the plaintiff, "in the exercise of reasonable prudence and discretion, to believe" that Sheldon had authority to represent the defendants "in regard to the transaction in question." *Lord* v. *Lowell Inst. for Sav.*, 304 Mass. 212, 214 (1939). *Costonis* v. *Medford Housing Authy.*, 343 Mass. 108, 113 (1961). *Salem Bldg. Supply Co.* v. *J.B.L. Constr. Co.*, 10 Mass. App. Ct. at 365.

Sheldon's affidavit also states that the first agreement was "in accordance with the parties' wishes." Even if the facts at trial do not show that the conditions set forth in the January agreement were authorized by the defendants,[6] the plaintiff was not necessarily precluded from giving notice of an intent to exercise the option and also seeking to obtain more favorable terms. There is nothing "inconsistent in the plaintiff's [exercise of the option] . . . and the conclusion thereby of a binding agreement with the effort afterwards to procure modifications of that agreement." *Beach &*

---

[6] In support of their contention that the January agreement was a counteroffer, the defendants rely on the following three provisions of that agreement: (1) that the sale was contingent on the plaintiff's obtaining financing; (2) that passing of papers was to take effect on March 1, 1978, i.e. before October 25, 1978, see note 2, *supra*; and (3) that the price was contrary to the provisions of the option. See note 4, *supra*.

*Clarridge Co.* v. *American Steam Gauge & Valve Mfg. Co.*, 208 Mass. 121, 131 (1911). See *C & W Dyeing & Cleaning Co.* v. *DeQuattro*, 344 Mass. 739, 741 (1962). 1A Corbin, Contracts § 264, at 511, 523-524 (1963). Compare *Westinghouse Bdcst. Co.* v. *New England Patriots Football Club, Inc.*, 10 Mass. App. Ct. 70, 73-74 (1980). Sheldon's affidavit also warrants an inference that there was a subsequent waiver by the defendants of the inadequacy, if any, of the exercise of the option. See *Mayer* v. *Boston Metropolitan Airport, Inc.* 355 Mass. 344, 353 (1969); *Louis Stoico, Inc.* v. *Colonial Dev. Corp.*, 369 Mass. 898, 903 (1976).

From the foregoing, it is apparent that there are here issues of material fact which preclude a determination on summary judgment that the plaintiff did not properly give notice of his intent to exercise the option. See *Stetson* v. *Selectmen of Carlisle*, 369 Mass. at 763; *Salem Bldg. Supply Co.* v. *J.B.L. Constr. Co.*, 10 Mass. App. Ct. at 365; *United States* v. *Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*