Toomey, J.
INTRODUCTION
Plaintiff, Ashburnham-Westminster Regional School District Committee (AWRSD), brings this action against defendants, Anthony J. Katter, Jr., Marcia Katter, Kent Katter, Trinity Lutheran Community Nursery School, Inc. (Trinity), Fleet Bank (Fleet), New England Allbank (Allbank) and First Safety Fund Bank (Safety Fund), to recover substantial amounts of money allegedly stolen by AWRSD’s former employee, Anthony J. Katter, Jr. (Katter). AWRSD contends that the defendant banks permitted Katter to establish unauthorized bank accounts and that the banks also cashed and negotiated checks that were not properly payable because unauthorized signatures were contained within the instruments. AWRSD asserts that said actions by Safety Fund amount to negligence (Count XXV); violations of banking standards (Count XXVI); violations of G.L.c. 44, 71 (Count XXVII); violations of G.L.c. 93A, §§2, 11 (Count XXVIII); and conversion (Count XXIX). Safety Fund and AWRSD have cross-motioned for summary judgment pursuant to Mass.R.Civ.P. 56 on Counts XXV-XX1X. In addition, Safety Fund moves for summary judgment on Counterclaim II, which asserts a claim for unjust enrichment against AWRSD concerning a loan Safety Fund made to AWRSD, through Katter, in 1991. For the following reasons, the plaintiffs and defendant’s motions for summary judgment are denied.
BACKGROUND
On February 3, 1986, AWRSD hired Katter as the School District’s business manager and treasurer. On April 2, 1992, Katter was arrested and charged with various criminal counts, all stemming from the misappropriation of AWRSD's funds.
The Checks
From early 1987, Safety Fund accepted for deposit or cashed checks for Katter drawn on various banks and bank accounts. Some of the checks Safety Fund accepted from Katter were drawn on AWRSD account number 705146124 at Bank of New England (BNE); that BNE account subsequently became Fleet Bank account number 5705146124 (collectively “Fleet/BNE checks”).[2] Safety Fund permitted Katter to deposit the proceeds from most of the Fleet/BNE checks into accounts at Safety Fund belonging to either Katter or Trinity. (Safety Fund, ex. 9.) Katter had unrestricted authority to endorse checks for Trinity.[3] Safety Fund also accepted checks from Katter drawn on the AWRSD account at Fleet/BNE and deposited the proceeds into an account at Safety Fund belonging to *13 AWRSD. (Safety Fund, ex. 10.) In sum, Safety Fund permitted Katter to deposit proceeds, from the AWRSD account in Fleet/BNE, into Katter, Trinity and AWRSD accounts in Safety Fund.
The Loan
Pursuant to its corporate borrowing resolutions, AWRSD had authorized Katter to borrow money and obtain credit from Safety Fund. (Welch dep. pp. 37-39, 76.) On that authority, Katter requested that Safety Fund submit a bid to loan AWRSD $110,000 to finance roof repairs on the John R. Briggs Elementary School in Ashburnham. (Giovino Afft, ¶¶5 and 6.) On July 29, 1991, Safety Fund submitted a bid to loan $110,000 to AWRSD; the bid was accepted by AWRSD. (Giovino Afft, ¶7). Safety Fund credited $110,000 to an AWRSD account. [Id. at ¶8.) The loan was documented by a promissory note running from AWRSD to Safety Fund. On September 2, 1992, Safety Fund demanded payment due on the loan and AWRSD refused to make any payment to Safety Fund. [Id. at ¶10).
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Counts XXV-XXIX (Banking Practices)
AWRSD contends that Safety Fund wrongfully cashed and negotiated checks for Katter, which checks contained either forged maker signatures and/or forged endorsements, and is therefore liable for numerous violations of banking law, violations of G.L.c. 93A, conversion and negligence. Before Safety Fund can be held liable on any of AWRSD’s counts, however, AWRSD must show that Safety Fund accepted checks from Katter that contained forgeries or unauthorized signatures. The main issue in dispute between the parties on Counts XXV-XXIX is whether Katter had authorization to sign checks which Safety Fund accepted.
General Laws c. 106, §1-201(43) states that an unauthorized signature or endorsement occurs where a signature is either forged or is made without actual, implied or apparent authority. A bank is liable for conversion when it pays on a forged endorsement or signature. G.L.c. 106, §3-419(1)(c). Whether a bank is liable for conversion or other claims may depend upon whether the agent (Katter) signing the principal’s (AWRSD) checks had actual or apparent authority. An unauthorized signature receives the same treatment as a forgery. Equitable Life Assur. Soc. of U.S. v. Okey, 812 F.2d 906, 908 (4th Cir. 1987). In essence, AWRSD’s claims against Safety Fund require a showing that Katter’s signature on the checks amounted to a forgery or unauthorized signature.
Safety Fund offers admissions from Fleet/BNE, that, according to its records, Katter was authorized to sign checks on the Fleet/BNE account. AWRSD offers the affidavit of William E. Allen[4] (Allen) to counter this evidence, stating that Katter was unauthorized to open the AWRSD account at Fleet/BNE and that this account was opened with a “forged signature card, . . . labeled with defendant Katter’s home address.” (Allen Aff't ¶3.) Thus, Safety Fund and AWRSD offer conflicting evidence as to whether Katter had authorization to open the Fleet/BNE account; such authorization from AWRSD so to open would be necessary for Katter to sign checks as an authorized agent of AWRSD. There exists, accordingly, a genuine issue of material fact as to Katter’s authority. See Salem Building Supply Co., Inc. v. J.B.L. Construction Co., Inc., 10 Mass.App.Ct. 360, 365 (1980) (authority of an agent is a question of fact); Kuwait Airways Corp. v. American Sec. Bank, N.A., 890 F.2d 456, 460 (D.C. Cir. 1989) (collecting bank converted corporation’s funds by cashing checks drawn on an unauthorized corporate account established by a corporate employee for the purpose of embezzling funds); D&G Equipment Co., Inc. v. First National Bank of Greencastle, DA., 764 F.2d 950, 956-57 (3d Cir. 1985) (bank converted corporate funds by permitting a former corporate officer to establish a corporate account without express, implied or apparent authority).
Because there remains an issue as to Katter’s actual or apparent authority with regard to the AWRSD checks, there necessarily remain genuine issues of material fact as to whether Safety Fund failed to adhere to reasonable commercial banking standards, acted in a negligent manner, committed conversion or engaged in G.L.c. 93A misconduct. See, for example, Kuwait Airways Corp., supra at 464; American Sec. Bank v. American Motorists Ins. Co., 538 A.2d 736, 739-41 (D.C. App. 1988). Accordingly, the cross- *14 motions for summary judgment are denied on Counts XXV, XXVI, XXVII, XXVIII, and XXIX.
II. Counterclaim II (Unjust Enrichment)
Massachusetts law plainly provides that one who has been unjustly enriched at the expense of another is required to make restitution to that other. Salamon v. Terra, 394 Mass. 857, 859 (1985). Where a borrower benefits from a loan, the lender is entitled to repayment. Nelson v. Pederson, 361 Mass. 392, 394 (1972). Safety Fund relies on that law in support of its Motion for Summary Judgment on Counterclaim II.
Safety Fund alleges that the $110,000 loan proceeds were credited to an account owned by AWRSD, that the money from the loan had been used by AWRSD to repair the Briggs Elementary School roof and that, therefore, a clear benefit to the AWRSD resulted from the loan. Safety Fund contends that it is entitled to payment of the loan; otherwise, AWRSD would be unjustly enriched. AWRSD responds that it received no benefit from the loan because, in the circumstances, Safety Fund’s negligence contributed to substantial amounts of money being diverted from the school system and that the members of the school committee are still attempting to sort out what money Katter allegedly stole.
In urging summary judgment in its favor, Safety Fund offers deposition testimony of the former superintendent of AWRSD, Dr. John J. Welch (Welch), to the effect that the funds had been used to roof the Briggs School. (Welch Deposition, pp. 32-33, 77.) Furthermore, AWRSD's answers to Safety Fund’s counterclaims admit that the loan proceeds were used by the School Committee (see plaintiffs answer to counterclaims, ¶¶18, 19, and 20), and Richard O’Shea, the business manager for AWRSD, stated in his deposition that the money from the loan was used for repairing the Briggs School roof. (O’Shea deposition, p. 30.)
While, as noted, O’Shea stated in his deposition that the money was used to repair the Briggs roof, he also stated in his deposition that there was no strict delineation, on a fund accounting basis, of monies coming into the school district or being expended. His deposition can be read as suggesting that AWRSD has been unable to identify exactly which funds Katter stole and which funds were used on the Briggs roof. (Id. at p. 32.) Accordingly, O’Shea’s statement demonstrates that there exists a genuine dispute of material fact as to whether AWRSD had benefitted from the loan. Safety Fund’s motion for summary judgment on Counterclaim II is, therefore, denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs and defendant’s cross-motions for summary judgment on Counts XXV-XXIX and defendant’s motion for summary judgment on Counterclaim II are DENIED.

 Safety Fund has submitted several checks from different accounts at several banks with which Katter and Safety Fund had dealings. For purposes of this motion, the court is only concerned with any instruments that would demonstrate a genuine issue of material fact and will not address each check submitted.

 Trinity was a day care center of which Katter’s wife was president and Katter treasurer.

 William E. Allen is the Superintendent of Schools for AWRSD.