Sherman, P.J.
This is an action in contract to recover the balance due on a promissory note executed by Marlborough West Associates Ltd. Partnership (“the defendant”) and personally guaranteed by five of the individual defendants who were general partners. The defendant has appealed the court’s entry of summary judgment in favor of the plaintiff and denial of the defendants’ Dist./Mun. Cts. R. Civ. E, Rule 52(b) motion to amend such judgment.
The underlying facts are largely undisputed. The plaintiff owned a parcel of land on Northboro Road in Marlborough, Massachusetts and a building located thereon which the plaintiff utilized as a lodge. In December, 1982, the parties entered into negotiations for the defendant’s purchase of the plaintiff’s property which was to be partially utilized for parking in the defendant’s office building development on adjacent land. Terms of the parties’ negotiations were set forth in correspondence from Smith Realty Management (as defendant’s agent) to the *16 plaintiff dated December 26, 1982 and January 6, 1983. The principal terms included a cash payment of $31,678.00 by the defendant; a second mortgage on the property in the amount of $133,315.00 at twelve (12%) percent per annum, to be paid to the plaintiff in 180 monthly installments of $1,600.00; and a ninety-nine year lease of the lodge by the plaintiff at a monthly rent of $600.00 for the first 15 years and a $1.00 monthly rent for the remainder of the lease term. The correspondence referenced a “net payment” per month of $1,000.00 by the defendant.
On August 24, 1983, the defendant signed a promissory note secured by a mortgage on the property in the principal amount of $133,315.00. The note expressly required monthly payments of $1,600.00 for 15 years by the defendant. Individual defendants Robert J. DePietri, Ida M. Labadini, Robert J. DePietri, Jr., Sidney Schwartz and Richard Smith executed personal guaranties of the note. The parties also entered into a written ninety-nine year lease of the lodge by the plaintiff at a monthly rent of $600.00 for the first 15 years. Although the promissory note did not reference the lease, clause 12(A) of the lease stated that, “contemporaneously with the execution of the lease,” the defendant-lessor had borrowed from the plaintiff-lessee “the sum of $133,315.00 at 12% interest payable in 180 equal monthly installments.” Further, clause 4 of the lease stated:
Rental amounts shall not be due and payable to the Lessor in the event that the Lessor is in default under the terms of a note given to the Lessee...
From September, 1983 through February, 1991, the defendant made monthly payments of $1,000.00 to the plaintiff. The plaintiff did not tender any payments to the defendant. On March 7,1991, the defendant defaulted on its first mortgage held by John Hancock Mutual Life Insurance Company. Hancock foreclosed on the premises, thereby terminating the plaintiffs lease of the lodge. The defendant also defaulted on its promissory note obligations to the plaintiff and this action ensued.
The trial court allowed the plaintiff’s Dist./Mun. Cts. R Civ. R, Rule 56 motion on the question of liability, and ordered that damages were to be assessed after hearing of an appropriate motion by the plaintiff.
The plaintiff submitted a memorandum requesting damages in the amount of the $134,015.30 balance due on the promissory note, plus interest, costs and collection expenses, including attorneys’ fees. The defendant filed a memorandum in opposition supported by the affidavit of its general partner, defendant Robert J. DePietri. The defendant asserted that damages should be limited to $1,000.00 per month for the balance of the note term rather than the $1,600.00 per month required by the note. The defendant argued that the promissory note, mortgage, lease and guaranties were mere formalities prepared at the plaintiffs request for tax purposes; that the actual terms agreed upon by the parties were set forth in the January 6, 1983 Smith Realty correspondence, including the parties’ agreement to restrict the defendant’s liability to $1,000.00 per month; and that the promissory note should be reformed by the court to reflect the parties’ actual intent.
The court entered judgment for the plaintiff in the amount of $134,015.30 plus $26,057.50 in interest, $239.93 in costs and $9,743.92 in attorneys’ fees.
1. It is undisputed that the defendant defaulted on its promissory note payments to the plaintiff and is thus indebted for the note balance. There was no error, therefore, in the trial courfs order for partial summary judgment in favor of the plaintiff on the question of the defendants liability. Dist./Mun. Cts. R Civ. P., Rule 56(c). See generally, Davidson Pipe Supply Co. v. Johnson, 14 Mass. App. Ct. 518, 521 (1982).
2. The defendant’s charge of error is restricted to the courfs assessment of damages on the basis of the $1,600.00 per month payment required by the promissory note. To secure a reduced assessment based on the $1,000.00 payment to which the defendant claims the parties agreed, the defendant sought reformation of the promissory note on the grounds of mutual mistake.
Reformation is, however, an equitable remedy, DeVincent Ford Sales, Inc. v. First *17 Mass. Corp., 336 Mass. 448, 453 (1957); Torrao v. Cox, 26 Mass. App. Ct. 247, 251 (1988), within the Superior Court’s jurisdiction. LaFleur v. C.C. Pierce Co., 398 Mass. 254, 257 (1986). The District Courts lack general equity powers. Johnson v. Superintendent, Mass. State Police, 416 Mass. 616, 617 (1993). Although equitable defenses may be raised in an action at law in the District Courts, G.L.c. 231, §31, only those equitable defenses which would entitle a party to absolute and unconditional relief may be advanced. Bancroft Tr. Co. v. Canane, 271 Mass. 191, 198-199 (1930); Cosmopolitan Tr. Co. v. S. Vorenberg Co., 245 Mass. 317, 320 (1923).
3. Moreover, the defendants have failed to marshal evidence sufficient either to defeat the plaintiffs contract claim for the $1,600.00 per month expressly required by the promissory note, or even to raise a genuine issue of fact requiring a trial on the merits on this point. A mutual mistake warranting reformation, rescission or other equitable relief is an actual mistake shared by both parties as to an essential element or assumption of the parties’ contact which was capable of ascertainment at the time of contract execution. LaFleur v. C.C. Pierce Co., supra at 257-258; Covich v. Chambers, 8 Mass. App. Ct. 740, 749 (1979). Such mistake is not established by a mere preponderance of the evidence, but must be demonstrated by clear and convincing proof. Id. at 747. See also Mickelson v. Barnet, 390 Mass. 786, 792 (1984).
The only evidence of an alleged mutual mistake advanced by the defendant is the conclusory averment of individual defendant Robert J. DePietri that the parties intended to be bound not by the documents they executed, but instead by the proposed terms set forth in the January 6, 1983 Smith Realty correspondence. A comparison of such correspondence[2] fails,- however, to disclose any discrepancy between the terms negotiated by the parties and those ultimately incorporated into the defendant’s promissory note and the plaintiff’s lease.
We note at this juncture that although the promissory note upon which the plaintiff’s claim is predicated does not reference the parties’ lease and would carry the usual presumption that it was an integrated contract, Bendetson v. Coolidge, 7 Mass. App. Ct. 798, 802-803 (1979), neither party herein disputes the obvious fact that the parties’ real estate transaction was comprised of both of these two simultaneously executed contracts.[3] The January 6, 1983 correspondence alleged by the defendant as the embodiment of the parties’ actual agreement specifically called *18 for the execution of both a promissory note and a lease as integral components of the parties’ contractual undertaking. It is thus evident that both documents must be read together as parts of a single transaction. Holmes Realty Trust v. Granite City Storage Co., 25 Mass. App. Ct. 272, 275-276 (1988).
An examination of the lease and promissory note conclusively establish that there is no merit to the defendant’s claim that these contracts fail to embody the specific terms negotiated by the parties. Simply stated, there is no evidence of mutual mistake or of any prior or subsequent agreement by the parties to restrict the defendant’s liability to $1,000.00 per month. The January 6, 1983 correspondence expressly provided for monthly lease payments of $600.00 by the plaintiff and monthly note payments of $1,600.00 by the defendant. As a practical matter, the defendant made a monthly “net payment” of $1,000.00 to the plaintiff for seven years which represented the dollar set-off or difference between the parties’ monthly obligations to each other. The January 6, 1993 correspondence in fact unambiguously refers to a monthly “net payment” of $1,000.00 by the defendant.[4] This reference to a “net payment,” however, in no way negates or renders ambiguous the unequivocal statement of the defendant’s $1,600.00 monthly liability on the promissory note which appears in both the correspondence relied upon by the defendant and the promissory note itself.
4. Thus viewing the summary judgment materials submitted by both parties in the light most favorable to the defendant, Salem Bldg. Supply Co. v. J.B.L. Construc. Co., 10 Mass. App. Ct. 360-365 (1980), it is clear that the record is devoid of any evidence sufficient to raise a genuine issue of fact as to whether the parties’ mutually agreed to restrict the defendant’s liability to $1,000.00 or any other amount less than the $1,600.00 per month required by the note. It is equally evident that the trial court properly based its assessment of damages on this $1,600.00 monthly figure rather than the “net payment” amount urged by the defendant. The defendant’s default on its note payment to the plaintiff released the plaintiff from its $600.00 per month rental obligation pursuant to clause 4 of the lease. The plaintiff’s tenancy was terminated in any event by Hancock’s foreclosure after the defendant’s default on its first mortgage. With the termination of the plaintiff’s $600.00 per month rental obligation, the defendant’s monthly note liability could no longer be reduced to a $1,000.00 net payment.
The trial court’s summary judgment for the plaintiff is affirmed.
Report dismissed.

The parol evidence rule would customarily preclude any resort to extrinsic evidence of prior agreements or negotiations to contradict or alter, even potentially, the terms of an unambiguous and final written contract. Amerada Hess Corp. v. Garabedian, 416 Mass. 149, 155 (1993); Massachusetts Municipal Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 48 (1991). However, the parol evidence rule does not bar extrinsic evidence of intent when fraud or mistake is alleged. Polaroid Corp. v. The Travelers Indemnity Co., 414 Mass. 747, 756 (1993).

Contrary to the plaintiff’s contention, the parol evidence rule does not require a determination of the defendant’s liability strictly on the basis of its promissory note and without regard to the terms of the parties’ lease. Before the parol evidence rule becomes applicable, a trial court must determine if the written contract at issue is a final and complete, i.e. integrated, statement of the parties’ agreement. Schinkel v. Maxi-Holding, Inc., 30 Mass. App. Ct. 41, 46 (1991), Ryder v. Williams, 29 Mass. App. Ct. 146, 149 (1990). Integration is a preliminary question of fact which may be resolved upon extrinsic evidence, including proof of prior negotiations. Id. at 149. See also Carlo Bianchi & Co. v. Builders’ Equip. & Supplies Co., 347 Mass. 636, 643-644 (1964). In the instant case, there is no genuine factual issue as to integration. Both parties concede and all documents demonstrate that the parties’ transaction was not limited to the defendant’s execution of a promissory note. We concur, however, with the plaintiff that the defendant’s liability must be based on the $1,600.00 figure whether the promissory note is construed separately or in conjunction with the lease.

This documented recognition by the parties in their pre-contract negotiations that their respective monthly payments would result in a $1,000.00 “net payment’ by the defendant belies the defendant’s alternative argument on this appeal that the plaintiff’s acceptance of monthly $1,000.00 payments evidenced the parties’ subsequent modification of the amount due on the promissory note.