This is a summary process action in which judgment was entered for the plaintiff after a jury trial. The jury made no ultimate finding, but answered special questions submitted by the trial judge. The judge then ordered judgment for the plaintiff as was dictated as a matter of law, in his view, by those answers. The defendant has appealed pursuant to Dist/Mun. Cts. R.AD.A, Rule 8C.
This case involves a dispute between siblings. Plaintiff Dolores Griffin (“Dolores”) sought to evict her brother, defendant Richard Cogliano (“Richard”), from residential property once owned by their father. More precisely, in November of 1993, the father, Dominic Cogliano (“Dominic”), established the D & C Realty Trust, with himself as trustee, to which he then transferred the residential property in question located at 7 Kennedy Park in Woburn. The trust agreement provided that upon his death, any principé and income remaining in it would go to his children, Dolores and Richard. The trust agreement further provided that upon Dominic’s death, Dolores would become trustee for the purpose of terminating the trust and distributing its property to the designated beneficiaries. It was Dolores’ position at trial that on November 30,1995, her father amended the D & C Realty Trust agreement so as to remove Richard as a potential beneficiary and to provide that upon his (Dominic’s) death, the principal and interest would be transferred to her. Dominic died on June 7, 2000. Six months later, Richard received a written notice from Dolores’ attorney who stated that it was his conclusion that Dolores was the owner of 7 Kennedy Park, that Richard should contact him with respect to the payment of rent, and that Dolores planned to sell the property. One month later, on January 24, 2001, the same attorney sent Richard a notice to quit on Dolores’ behalf. While Richard admitted at trial that he received the attorney’s first letter, he testified that he did not receive the notice to quit The notice was not personally served, but was instead left at 7 Kennedy Park as Richard’s “last and usual place of abode.” On March 20, 2001, Dolores filed this summary process action on her own behalf rather than as trustee. It was not until March 26,2001 that Dolores, in her capacity as trustee of the D & C Realty Trust, transferred the property at 7 Kennedy Park to herself as an individual and then dissolved that trust
It was Richard’s position at trial that his sister did not own 7 Kennedy Park because the November 30,1995 amendment to the trust agreement was a forgery, and that he and Dolores were thus at minimum co-owners of the property Richard also contended, however, that in feet he was the sole owner of the properly In support of this position, Richard presented evidence at trial that in November of 1997, his father had deeded 7 Kennedy Park to him in his (Richard’s) capacity as trustee of Snowhill Manor Realty Trust This deed named Dominic A Cogliano as grantor even though he held that property only in his capacity as trustee of the D & C Realty Trust This failure to state correctly the legal identity of the owner was, *56 Richard contended, the result of a mistake by the lawyer hired to draft the deed. (At trial, the lawyer testified that neither Richard, nor his father, told him the property was held in trust) Richard further contended that his father’s intent to convey the property to him was evidenced by the fact that at the same time he deeded the property to Richard, Dominic drafted a will in which he left all his estate to Richard, specifically omitting Dolores.
Richard also testified at trial that when he was released from the armed services, his father allowed him to use the playroom area of the house at 7 Kennedy Park as his own. Dominic and his wife lived in the rest of the house. The playroom had its own separate entrance. In exchange for this use of the premises, Richard paid various household expenses.
After the close of the evidence at trial, the judge submitted the case to the jury solely on the basis of the following three questions: first, whether Dominic’s signature on the November 30,1995 amendment to the D & C Realty Trust agreement, whereby Richard was removed as a beneficiary, was genuine; second, if the signature was genuine, whether Richard was “something other than a tenant at will” at 7 Kennedy Park; and third, if Richard was a tenant at will, did he actually receive the notice to quit The jury answered the first two questions in the affirmative and, therefore, never reached the third question. The jury was not asked to consider the issues of whether Dolores could properly send a notice to quit and file the summary process action in her own name and whether the true owner of the property was in fact the Snowhill Manor Realty Trust by virtue of the 1997 deed. As to the former question, the trial judge ruled as a matter of law that since Dolores held legal title as trustee and the sole beneficial interest, she held the property free of the trust and could thus evict her brother in her own name. As to the latter issue, the trial judge also ruled as a matter of law that Richard could not seek a reformation of the 1997 deed in this summary process action.
Richard contends on this appeal that the trial judge erred (1) in ruling that Dolores could bring this action in her personal capacity, (2) in not presenting to the jury the issue of whether he was the true owner of the property and (3) in failing to instruct the jury that as provided in G.L.c. 186, §13, “[a] tenancy at will of property occupied for dwelling purposes shall not be terminated by operation of law by the conveyance, transfer or leasing of the premises by the owner or landlord thereof”
1. The trial judge correctly ruled that Dolores could commence this eviction in her own name. At the time she did so, her father had died. Accordingly, under the terms of the original trust agreement she had become trustee. Moreover, under the terms of the 1995 amendment, she was the only potential beneficiary named. In 1995, of course, Dominic was still alive. That being the case, Dolores’ beneficial interest had not become a vested property interest at that point because her father could have again amended or even revoked the trust pursuant to Article VII (a) and (b) of the Trust agreement See Old Colony Trust Co. v. Clemons, 332 Mass. 535, 540 (1955). However, Dolores’ interest did vest upon Dominic’s death. Any powers he had to amend or revoke “obviously died with him.” State Street Bank & Trust Co. v. Reiser, 7 Mass. App. Ct. 633, 636 (1979). On his death, “the legal title to the trust property and the entire beneficial interest [became] united in one person,” to wif Dolores, and the trust terminated. RESTATEMENT (SECOND) OF TRUSTS §341 (1959). See Gorin v. Morello, 360 Mass. 859 (1971).
2. Richard also raises on this appeal a much more fundamental issue about title than the question of merger. He argues that it was error not to allow the jury to consider his contention that he, not his sister, was actually the true owner of 7 Kennedy Park. This contention was based on the 1997 deed whereby Dominic, in his individual capacity, purportedly conveyed that property to Richard, as trustee of Snowhill Manor Realty Trust Because Dominic held the property at that time as trustee of D & C Realty Trust, he did not personally own the property and could *57 not, therefore, convey it. See Rogaris v. Albert, 431 Mass. 833, 836 (2000). Richard argues, however, that the jury should have had the opportunity to decide whether Dominic meant to convey the property as trustee and whether the failure to do so was the result of a mistake by the attorney drafting the deed.
While “one who enters and occupies the land of another as the tenant of the latter is estopped to dispute the title of his landlord,” Connors v. Wick, 317 Mass. 628, 630 (1945), that rule is based on the notion that the tenant’s right to occupy the property is derived solely from his arrangement with the landlord and that he is not in a position, therefore, to complain about the landlord’s status. Connolly v. Kilcourse, 285 Mass. 398, 399 (1934). As noted in Connolly, “[t]he only defense possible for a [tenant] is eviction by superior tide.” Id. Here, Richard claims such “superior” tide. More importantly, he is claiming that Dolores could not establish, as she must, that there was a landlord-tenant relationship between them. If Dominic in feet deeded 7 Kennedy Park to Richard, then that properly was not owned by D & C Realty Trust or by Dolores, individually. Thus, Dolores would have no basis to bring a summary process action. For Richard to prevail on that claim, however, would require the feet finder, in effect, to work a reformation of the 1997 deed - at least for the purposes of this case. Richard’s defense is one in equity.
“In the district courts, the defendant may allege in defense any facts which would entitie him in equity to be absolutely and unconditionally relieved against the plaintiffs claim....” G.L.c. 231, §31. See Ahepa Charitable Corp. v. Marlboro West Associates Ltd. Partnership, 1995 Mass. App. Div. 15, 17. See also, Ace Trophy Co. v. Gordon, 354 Mass. 767 (1968) (“Even if the plaintiff could set up, as it did, an equitable defence to the summary process under G.L.c. 231, §31, it might instead, at its option, bring this proceeding both for declaratory relief and to restrain the prosecution of the summary process.”). If Richard was the true owner of the property or if his sister had no legal basis for bringing this action, he had a right to remain there and thus be “absolutely and unconditionally relieved against” his sister’s claim. Reformation of a written instrument may be sought as part of a defense. For example, in Mates v. Penn Mut. Life Ins. Co., 316 Mass. 303 (1944), the plaintiff brought a contract action to recover an unpaid balance of the cash surrender value of a life insurance policy. In finding for the defendant, the trial judge found a mutual mistake in the drafting of the policy. In overruling the plaintiff’s exceptions, the Supreme Judicial Court noted that “[o]n familiar principles, the defendant had an equitable right to have the policy reformed.” Id. at 306. Moreover, mutual mistake occasioned by a scrivener’s error is an appropriate basis upon which to reform a deed. See Franz v. Franz, 308 Mass. 262, 266 (1941) (“The fact that the parties accepted the deed phrased [by its drafter] in language not in accord with their directions and intentions is not a ground for refusing reformation of the deed.”). See also Torrao v. Cox, 26 Mass. App. Ct. 247, 250 (1988). And the fact that the person for whom the instrument was drafted has died, as was the case here, “should not foreclose relief.” Berman v. Sandler, 379 Mass. 506, 510 (1980) (involving a mistake in the amendment to a trust).
We recognize that a summary process action in the district court may not be the best forum to adjudicate these issues. Whatever the outcome in this case, this dispute between siblings may still not be resolved with any finality. A determination as to whether a plaintiff in an eviction satisfied her burden of establishing the requisite relationship will not affect the tide. See McCoy v. McRae, 37 So. 2d 353, 355 (Miss. 1948). Jurisdiction to reform the deed, or to quiet title, lies elsewhere. See DeVincent Ford Sales, Inc. v. First Mass. Corp., 336 Mass. 448, 453 (1957) (“In various respects the equitable remedy by way of reformation [in the Superior Court] could prove more complete and appropriate than asserting an equitable defence to successive actions at law for rent”). See also G.L.c. 240, §6 concerning actions in the Supreme Judicial, Superior and land Courts to quiet title. Moreover, it appears that these par *58 ties have matters pending in the probate court Despite these alternative avenues to resolve this sibling dispute, the plaintiff chose to bring this summary process action in the District Court and the defendant has the right to defend himself.[1]
3. So that it need not be litigated at any future trial, we address the final issue raised in this appeal At trial, Richard had asked the judge to instruct the jury that a tenancy at will would not be terminated by the conveyance, transfer or leasing of the premises by the owner. The requested instruction was a correct statement of the law. See G.L.c. 186, §13. However, the judge’s Mure to so instruct, in the circumstances of this case, would not have required reversal of the judgment below since the evidence would not have warranted a finding by the jury that Richard was a tenant at wilL “The relationship of landlord and tenant arises out of a contract by which for a consideration, usually the payment of rent, one party permits the other to use and occupy certain premises. ” Miller v. Beck, 328 Mass. 393, 397 (1952). In this case, there was insufficient evidence to warrant a finding that Richard gave his father consideration for use of the premises. To support his contention that his payment of some of the household expenses qualified as consideration, Richard submitted into evidence various bank statements. Even though he testified that he had lived at 7 Kennedy Park since he returned home from Vietnam in the 1970’s, the bank records show no expenditures before January 11,1997. Between that date and November 12,1997, the date on which Richard contended his lather actually meant to deed him the property, there were only two expenditures that a jury could have found related to the use of the premises; namely, payments for a telephone bill (for $41.74) and an electricity bill (for $157.13). Such minimal payments could not constitute adequate consideration. Any expenditures after November 12, 1997, by Richard’s own testimony, were not made in his capacity as a lessee, hut as putative owner of the property.
Moreover, the nature of Richard’s use of the premises precludes the arrangement he had with his father from qualifying as a lease. “A lease gives the right of possession of the land, and the exclusive occupation of it for all purposes not prohibited by its terms.” Lowell v. Strahan, 145 Mass. 1, 12 (1887) quoted in Stratis v. McLellan Stores Co., 311 Mass. 525, 529 (1942). Richard acknowledged, however, that his father merely let him stay at 7 Kennedy Park after his tour of duty in Vietnam. When asked if his father lived there himself, Richard testified, “Oh, yes. It was his house.” He agreed that his father did not turn possession of the premises over to him until he actually deeded the property to him in 1997. A formal landlord-tenant relationship was not established merely because Richard may have predominately used “the playroom area” which had its own entrance and where he had a hotplate. If that were the case, a tenancy would be created every time an adult child lives with his parents and uses a specific area of the house.
In these circumstances, the jury could only have concluded, as it did, that Richard was “something other than a tenant at will” That being the case, he was entitled only to “sufficient notice of [his sister’s] intention to gain possession of the property and a rear sonable opportunity to vacate.” Poutahidis v. Clingan, 2001 Mass. App. Div. 217, 219.
Accordingly, the judgment for the plaintiff is vacated and the case is returned to the Woburn Division of the District Court Department for a new trial.
So ordered.

 While District Court judges ordinarily may be reluctant to stay summary process proceedings, this case may have presented such unusual circumstances so as to have warranted a stay to allow the parties to resolve their conflict in a more appropriate forum.