EDWARD L. COOK'S CASE. March 5, 1985. *Workmen's Compensation Act,* Findings by single member, Lump sum settlement.

The employee claims error in a judgment of the Superior Court which upheld a decision of the reviewing board. That decision denied the employee's claim for additional benefits under G. L. c. 152, § 34 (total incapacity), and § 36 (disfigurement).

The relevant facts and procedural events are these. On February 15, 1968, the employee suffered an injury to his right leg while working as a millwright. As a result of the injury, the employee's leg was amputated approximately eight inches below the knee and he was fitted with a prosthesis. The employee received total incapacity benefits under § 34 of c. 152 from February 16, 1968, to November 11, 1968, and from June 2, 1970, to November 2, 1970. On November 2, 1970, the employee returned to work full-time. He also signed an agreement, dated November 1, 1970, to discontinue compensation. The discontinuance agreement was filed with the Industrial Accident Board (board).

On April 10, 1969, the employee appeared before a commissioner of the board and agreed to accept, as a lump sum settlement, $3,750 for loss of function, under § 36(*o*) of c. 152, as amended by St. 1966, c. 584, and $1,375 for disfigurement, under § 36(*h*) of the same statute. The employee had assistance from a union representative at this hearing. On April 14, 1969, the employee and the insurer signed a "Standard Form for Agreement as to Compensation," reflecting the employee's acceptance of the foregoing lump sums in satisfaction of all of his § 36 claims. The agreement was approved by the board on July 13, 1970.

The employee continued to work as a millwright from November 2, 1970, until December 24, 1975. On that date, he retired from the company, as was his right upon reaching age sixty-two. He thereafter received his pension (and for one year after retirement, unemployment benefits).

On December 30, 1975, the employee filed a claim with the board for additional benefits. As subsequently amended, the claim sought: (1) total incapacity benefits under § 34 of c. 152, from the date of his retirement, December 24, 1975, to the present and continuing, and (2) benefits under § 36(*h*) of the same statute for disfigurement. On April 23, 1976, the claim was heard by a single member, who decided that the employee should receive additional benefits of $2,525. This decision was later reversed by the reviewing board. A hearing de novo was thereafter held before another single member (referred to hereafter as the single member) who made sub-

sidiary and general findings of fact. The single member concluded: (1) that the employee had terminated his employment with the employer on December 24, 1975, for reasons other than physical disability (viz., that he had voluntarily decided to retire), (2) that the employee's physical condition when he retired was not materially different from what his condition was during the five years preceding his retirement during which he managed (albeit with difficulty) to do the work of a millwright, and (3) that the employee was not disabled from performing the same work after December 24, 1975, that he had performed for the five-year period preceding that date. The single member's decision was affirmed by the reviewing board. The latter's decision was in turn affirmed by the Superior Court.

1. The employee's argument that a decision granting him additional total incapacity benefits under § 34 was required, as matter of law on the facts found, must be rejected. It is well established that the findings of the reviewing board are final unless they are wholly lacking in evidential support, and this is true even if different findings could have been made by the board. See e.g., *Demetre's Case,* 322 Mass. 95, 98 (1947); *Bator's Case,* 338 Mass. 104, 105 (1958); *Vaz's Case,* 342 Mass. 495, 497 (1961); *Parker's Case,* 357 Mass. 343, 345 (1970). The decisive issue governing the § 34 claim was whether the employee was disabled when he voluntarily retired and removed himself from the labor force. The single member found, as a fact, that the employee could have continued his work as a millwright.[1] That finding is supported by: (a) evidence that the employee had worked as a millwright despite his disability for the five years preceding retirement, (b) the employee's admission that his physical condition the year after his retirement was no different from what his condition was during the year immediately preceding retirement, when he was working full-time, and (c) testimony by the employee's orthopedic surgeon that, since the employee had worked from 1968 until his retirement in 1975, by definition he was not disabled, and that there had been no change in the employee's condition between 1975 and 1976, the time of the examination. This evidence supports the single member's crucial finding that the employee's termination from employment was a voluntary decision to take early retirement. That there may have been other evidence which would have warranted a finding favorable to the employee's § 34 claim is immaterial. It is not the reviewing court's function in these cases to "weigh conflicting evidence or determine the facts." *McCann's Case,* 286 Mass. 541, 543 (1934). As a final point on the § 34 question, we see nothing contradictory in the single member's findings that the employee suffered intermittent periods of disability after

---

[1] The reviewing board's decision superseded the single member's decision. However, since the reviewing board affirmed and adopted the findings of the single member, we look to those findings in determining whether the reviewing board's decision is correct. See *Haley's Case,* 356 Mass. 678, 679-680 (1970); *Russo's Case,* 1 Mass. App. Ct. 206 (1973).

he retired which were causally related to the accident. These were alternative findings made by the single member to assist the reviewing board and courts passing on the case, in the event any of his primary findings rejecting the employee's § 34 claim were determined to be legally insufficient.

2. The employee's attack on the lump sum payment of $1,375 for disfigurement under § 36(h) of c. 152, as amended by St. 1966, c. 584, also cannot prevail.[2] The board's approval of the lump sum agreement precludes further inquiry into the validity of the agreement, except upon a showing by the employee of fraud or mutual mistake. See *Perkins's Case,* 278 Mass. 294, 299 (1932); *Hansen's Case,* 350 Mass. 178, 180 (1966). Fraud has not been asserted. It is doubtful that the employee's assertions in the Superior Court were sufficient to raise a claim of mutual mistake. Giving the employee the benefit of the doubt on the point, any claim of mistake would rest primarily on certain "guidelines" adopted by the board on January 10, 1972 (1972 State publication no. 5868), to assist employers and insurers in computing § 36 benefits for injuries occurring on or after November 29, 1966. The employee argues that these guidelines called for a payment of approximately $4,000 in compensation for his disfigurement. Thus, the employee urges that the payment of $1,375 was short, and since contrary to the guidelines, a mistake.

The "guidelines" however, are, as they expressly state, merely "advisory . . . not prejudicial to the rights of any of the parties, and are subject to determination by the board member." More to the point, the guidelines cannot, by any stretch of the imagination, be held to apply to a lump sum agreement which was approved by the board in 1970, approximately eighteen months prior to the adoption of the guidelines in 1972. (The reference in the guidelines making them applicable to accidents occurring after November 29, 1966, can sensibly only apply to accidents in which § 36 benefits had not been made final.) There are also other relevant considerations. The employee had assistance from a union representative when he accepted the § 36(h) payment. The amount paid to him under § 36(h) fell within the range authorized by the statute governing industrial accidents occurring in 1968 and was examined and approved by the board. We conclude that any mistake with respect to the controverted payment for disfigurement fails the test for mutual mistake, see *O'Reilly's Case,* 258 Mass. 205, 208-209 (1927); *Perkins's Case, supra* at 300-301, and is, at worst, unilateral. This aspect of the case is thus governed by the principle that, absent fraud or mistake, "[t]he insurer cannot complain if the amount [of the lump sum agreement] is thought to be too large, nor the employee, if too small." *McCarthy's Case,* 226 Mass. 444, 446 (1917). There is nothing inimical

---

[2] The lump sum payment of $3,750 for loss of function under G. L. c. 152, § 36(o), as amended by St. 1966, c. 584, was the maximum payment then permitted for the amputation and is not challenged by the employee.

to this conclusion in the last sentence of G. L. c. 152, § 6, which requires that the board determine that any agreement made under c. 152 conform to the provisions of that statute.

*Judgment affirmed.*

*Pasquale J. Ventola* for the employee.
*John D. Lanoue* for the insurer.