MICHAEL LAFLEUR vs. C.C. PIERCE CO., INC. & another.[1]

Suffolk. April 8, 1986. — August 18, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Workmen's Compensation Act,* Lump-sum settlement, Agreement as to compensation. *Release. Mistake. Contract,* Rescission. *Practice, Civil,* Summary judgment.

An employee who entered into a lump-sum settlement agreement under G. L. c. 152, § 48, in redemption of his employer's liability for medical expenses and workmen's compensation benefits arising out of a work-related injury, would be entitled to have the agreement set aside on the ground of mutual mistake of fact, upon proof that the parties did not intend to release liability for an existing serious injury of which they were unaware at the time of entering the agreement. [257-260]

Where the language of a lump-sum settlement agreement pursuant to G. L. c. 152, § 48, did not unambiguously indicate whether the parties, an employee and his employer's workmen's compensation insurer, intended to discharge liability for an existing serious injury of which they were unaware, the employee, in an action to set aside the agreement on the ground of mutual mistake, would be entitled to introduce extrinsic evidence on the question whether the parties had a conscious and deliberate intention to release claims for injuries existing but not known to them at the time of the agreement. [260-261]

CIVIL ACTION commenced in the Superior Court Department on May 18, 1981.

The case was heard by *Hiller B. Zobel,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

---

[1] The Hartford Accident and Indemnity Company.

*Thomas B. Benjamin* (*Daniel Burnstein* with him) for the plaintiff.

*Andre A. Sansoucy* (*Richard L. Neumeier* with him) for the defendants.

HENNESSEY. C.J. The issue presented by this case is whether a settlement agreement may be set aside on the ground of mutual mistake where the parties were unaware at the time of entering the agreement that the injured person had suffered a serious and unknown injury.

In January, 1975, Michael LaFleur suffered a work-related injury when a forklift blade fell on his right foot. The company doctor told LaFleur that the injury was superficial, and that an X-ray showed no fracture or other complications. LaFleur returned to work within two weeks but continued to experience pain. A doctor from his employer's insurance carrier told La-Fleur that he was suffering from a sprain of his great right toe. LaFleur was offered a desk job, but was discharged in May, 1976, upon his failure to report for work.

In August, 1976, after filing a claim with the Industrial Accident Board, LaFleur entered into a lump-sum agreement with the employer's insurer in the amount of $4,000. The agreement recited that the payment was "in redemption of the liability for all weekly payments now or in the future due me under the Workmen's Compensation Act, for all injuries" received from the industrial accident. The agreement further provided that LaFleur understood "that this is a complete and final settlement of my claim and that I will not be able to reopen my claim or seek further benefits because of this injury." The Industrial Accident Board approved the agreement pursuant to G. L. c. 152, § 43 (1984 ed.), in November, 1976.[2]

After entering into this agreement, LaFleur experienced increasing pain in his right foot. In January, 1977, LaFleur was

---

[2] The agreement recited the following reasons why the settlement was in LaFleur's best interests: "The insurer questions the causal relation and extent of this disability because the employee was having problems with his left foot which was not involved in the work injury and a doctor at Tufts Medical felt poor footwear might be causing the problem. The insurer feels that the employee at least has an earning capacity and at best he is only partially disabled. The settlement is entered into to resolve the issues."

diagnosed as having arterial occlusive (Buerger's) disease. Several operations to combat this problem were unsuccessful. As a result of this disease, LaFleur eventually had both of his legs amputated above the knees. LaFleur is permanently confined to a wheelchair.

LaFleur filed a complaint in Superior Court against the employer and its insurer, requesting that the lump-sum settlement agreement be rescinded on the ground of mutual mistake, and that the case be recommitted to the Industrial Accident Board. LaFleur moved for partial summary judgment, and submitted in support thereof the affidavit of Dr. Edward D. Frank, an assistant professor of surgery at Harvard Medical School and surgeon at Beth Israel Hospital. Dr. Frank attested that he had examined LaFleur, and had concluded that LaFleur's arterial occlusive disease existed at the time of the accident, but had not been diagnosed "because the disease is rare and difficult to detect." Dr. Frank further attested that the forklift accident had injured LaFleur's arterial system and had aggravated the preexisting arterial disease. The injury to the arterial system was "completely separate, and distinct in nature" from the sprained toe which was diagnosed after the accident. Finally, Dr. Frank attested that the forklift accident was causally related to the amputation of LaFleur's legs.[3] LaFleur also introduced the defendants' answers to the plaintiff's interrogatories, as well as LaFleur's own affidavit, which indicated that none of the parties knew at the time the settlement was executed that LaFleur was afflicted with Buerger's disease, or that the forklift accident had aggravated this condition.

The judge denied LaFleur's motion for summary judgment, and entered judgment for the defendants. The judge reasoned that "[a]n incorrect prediction of the future, notwithstanding the inaccuracy proceeds from mutual ignorance of an essential

---

[3] According to Dr. Frank's affidavit, the forklift accident aggravated the Buerger's disease and injured LaFleur's arterial system, leading to the amputation of his right leg in 1979. Due to added stress to LaFleur's left leg as a result of this operation, the underlying arterial disease in the left leg was aggravated. As a result, LaFleur underwent an amputation operation on his left leg in 1980.

fact, is not grounds for setting aside a release which the parties have fairly and freely undertaken. . . . Here, the parties, each represented by counsel, struck a bargain. Plaintiff received compensation for his injuries; the insurer obtained a release from further liability. The one could not complain if the amount of the lump-sum agreement turned out to be too small, nor the other if the amount was, on hindsight, too large." LaFleur appealed from this judgment, and we transferred the case here on our own motion. We reverse.

Under G. L. c. 152, § 48, the parties to a worker's compensation claim may enter into a lump-sum agreement in redemption of the employer's liability for medical expenses and benefits. Once approved by the board, this agreement precludes reopening of the case except upon a showing of fraud or mutual mistake.[4] *Hansen's Case,* 350 Mass. 178, 180 (1966). *Cook's Case,* 19 Mass. App. Ct. 986, 988 (1985). Jurisdiction to set aside the lump-sum agreement on either of these equitable grounds rests with the Superior Court. *Perkins's Case,* 278 Mass. 294, 299 (1932). *O'Reilly's Case,* 258 Mass. 205, 209 (1927).

The legal principles underlying the doctrine of mutual mistake are well established. Where there has been a mistake

---

[4] In December, 1985, the Legislature amended G. L. c. 152, § 48, by St. 1985, c. 572, § 52, expanding the section to six numbered paragraphs, and making substantial additions and deletions. Paragraph (2) provides in part: "No lump sum agreement made prior to the establishment of liability for compensation shall prohibit an employee from subsequently filing a claim for medical benefits only, in any instance in which such employee has suffered a substantial deterioration of his medical condition which (i) could not reasonably have been foreseen at the time said agreement was entered into, (ii) is the result of an injury for which the insurer would have been liable under this chapter, absent the lump sum settlement. Claims under this paragraph shall be considered only if brought within one year of the date the employee first became aware of the causal relationship between the substantial deterioration and the employment. Claims shall be consistent with the procedures set forth in sections ten, ten A, and eleven. No liability for such claims shall be redeemed by any additional lump sum settlement."

This new provision, which provides for the reopening of certain settlements before the Industrial Accident Board (rather than the Superior Court) does not take effect until November 1, 1986, and therefore does not affect the rights and duties of the parties to this action.

between the parties as to the subject matter of a contract, there has been no "meeting of the minds," and the contract is voidable at the election of the party adversely affected. *Jeselsohn* v. *Park Trust Co.,* 241 Mass. 388, 392 (1922). 13 S. Williston, Contracts § 1535 (2d ed. 1970). The mistake must be shared by both parties, and must relate to an essential element of the agreement. *Century Plastic Corp.* v. *Tupper Corp.,* 333 Mass. 531, 534 (1956). *Cavanagh* v. *Tyson, Weare & Marshall Co.,* 227 Mass. 437, 444 (1917). See generally Restatement (Second) of Contracts § 152 (1975). The mistake must involve a fact capable of ascertainment at the time the contract was entered into, and not a mere expectation or opinion about future events. *Cook* v. *Kelley,* 352 Mass. 628, 632 (1967). *Aldrich* v. *Travelers Ins. Co.,* 317 Mass. 86, 88 (1944). A contract will not be rescinded for mutual mistake where one party was · aware at the time the contract was signed that he had limited knowledge as to essential facts, but nonetheless assumed the risk that circumstances would prove to be other than as expected. *Aldrich, supra. Covich* v. *Chambers,* 8 Mass. App. Ct. 740, 749 (1979). See *Maloney* v. *Sargisson,* 18 Mass. App. Ct. 341, 346 (1984). See generally Restatement (Second) of Contracts § 156, comment a (1975).

In *Tewksbury* v. *Fellsway Laundry, Inc.,* 319 Mass. 386 (1946), we declined to set aside a release for personal injuries on the ground of mutual mistake. The minor plaintiff had been struck and injured by a truck owned by the defendant. Her injuries were diagnosed as "abrasion of face and right hip, laceration in right groin, and fracture of the right femur." *Id.* at 387. She settled her claim against the defendant for $1,850, and executed a release in complete discharge of her claim for damages "ensuing from the aforementioned accident." *Id.* "Thereafter . . . , the plaintiff became afflicted with an 'aggravated and perilous condition of osteomyelitis of the right leg . . . directly, solely and exclusively a result of the accident.'" *Id.* at 387-388. The plaintiff brought a bill in equity seeking rescission of the release on the ground of mutual mistake. We held that "[t]he great weight of authority supports the view that a release of a claim for personal injuries cannot be avoided

merely because the injuries proved more serious than the re-
leasor believed them to be at the time of executing the release,
and that, in order to invalidate a release on account of mutual
mistake, the mistake must relate to a past or present fact mate-
rial to the contract and not to an opinion respecting future
conditions as a result of present facts." *Id.* at 389. Because
the plaintiff's osteomyelitis developed after the accident and
execution of the release, *id.* at 387, any misapprehension by
the parties related to a future condition, and not to a fact
capable of ascertainment at the time of contract.

In *Tewksbury,* we were confronted with a situation in which
the *consequences* of an injury turned out to be more serious
than expected.[5] In this case, however, we are dealing with a
separate condition which existed and yet was unknown to the
parties at the time of contract. Although this presents a question
of first impression in this Commonwealth, the great weight of
authority in other jurisdictions supports the view that a release
of claims for personal injuries may be avoided on the ground
of mutual mistake if the parties at the time of signing the
agreement were mistaken as to the *existence* of an injury, as
opposed to the unknown *consequences* of known injuries. See
*Evans* v. *S.J. Groves & Sons,* 315 F.2d 335, 339-341 (2d Cir.
1963) (latent head injury); *Great N. Ry.* v. *Reid,* 245 F. 86,
89 (9th Cir. 1917) (unknown hernia); *Casey* v. *Proctor,* 59
Cal. 2d 97, 110-112 (1963) (unknown fractured vertebrae);

---

[5] There is language in the *Tewksbury* decision which might indicate that
the plaintiff would not have been able to avoid the release even if her
osteomyelitis existed at the time that she entered into the contract. "[O]ne
who executes a release for consideration for the injuries then known cannot,
on the subsequent discovery of injuries not known or suspected at the time
of settlement, obtain a cancellation of the release on the ground of mutual
mistake." *Id.* at 388. This discussion is unwarranted by the facts of the
case (which indicate that the plaintiff's osteomyelitis developed *after* the
release was signed) and apparently in conflict with the language quoted
above. We decline the defendants' invitation to read the *Tewksbury* decision
broadly to preclude the rescission of a release where the parties are mistaken
as to the existence of an unknown injury.

The defendants also rely on language in *McCarthy's Case,* 226 Mass.
444, 446 (1917). That language, in so far as it relates to the crucial issues
in the instant case, may well be dictum. In any event, dictum or not, we
decline to interpret or follow that language as urged by the defendants.

*Gleason* v. *Guzman,* 623 P.2d 378 (Colo. 1981) (epilepsy); *Saunders* v. *New Orleans Pub. Serv., Inc.,* 387 So. 2d 603, 605 (La. Ct. App. 1980) (dormant bursitis); *Hall* v. *Strom Constr. Co.,* 368 Mich. 253, 258 (1962) (unknown brain injury); *Doud* v. *Minneapolis St. Ry.,* 259 Minn. 341, 346 (1961) (thoracic aneurysm); *Frahm* v. *Carlson,* 214 Neb. 532, 534-535 (1983) (herniated disc); *Mangini* v. *McClurg,* 24 N.Y.2d 556, 564 (1969) (hip injury); *Cambell* v. *Stagg,* 596 P.2d 1037, 1040 (Utah 1979) (herniated disc). Contra *Trevathan* v. *Tesseneer,* 519 S.W.2d 614, 615 (Ky. 1975) ("[g]eneral judicial reluctance in Kentucky to invalidate a release for personal injury claims on the basis of mistake"). See generally 6 A. Corbin, Contracts § 1291 (1962); Restatement (Second) of Contracts § 152 comment f (1975).

Of course, the intention of the parties is controlling, and the relevant inquiry is whether there has been a conscious and deliberate intention by the parties to release claims for injuries existing but not known to them at the time of the agreement.[6] See *Shea* v. *Bay State Gas Co.,* 383 Mass. 218, 225 (1981) (citing basic rules of contract construction). In this case, the release itself does not clearly or unambiguously indicate that the parties intended to discharge liability for the unknown injury to LaFleur's arterial system; rather, the standardized form of the Division of Industrial Accidents merely released claims "for all injuries received by Michael LaFleur on or

---

[6] Some jurisdictions which follow the "unknown injury" rule nonetheless decline to rescind a settlement agreement where the release explicitly discharges liability for both known and unknown injuries. See, e.g., *Emery* v. *Mackiewicz,* 429 Pa. 322, 326 (1968) (releasing "claims that are known and unknown, suspected and unsuspected"); *Gecy* v. *Prudential Ins. Co.,* 257 S.E.2d 709, 712 (S.C. 1979) (release plainly stated that it included subsequently discovered unknown injuries). Other courts, however, have held that a release may be avoided with respect to uncontemplated injuries despite the all-inclusive language of a settlement agreement. See, e.g., *Mangini* v. *McClurg, supra* at 562 ("based on a realistic recognition that releases contain standardized, even ritualistic, language and are given in circumstances where the parties are looking no further than the precise matter in dispute"). We decline to follow either of these two approaches, but instead adopt the view that the intent of the parties must be inferred from the entire circumstances of the agreement, including the language of the release.

about January 21 and February 15, 1975." Extrinsic evidence may thus be introduced to ascertain whether the parties intended to release liability for LaFleur's unknown injury. See *Mickelson v. Barnet*, 390 Mass. 786, 792 (1984) (parol evidence rule no bar to the consideration of extrinsic evidence of intent when mistake is alleged). Factors which should be considered on this issue include the language of the agreement; the circumstances of its negotiation and execution, including the legal representation of the parties; the seriousness of the unknown injury; and the consideration paid to the plaintiff for the release of the defendants' liability. The inquiry should include a consideration as to whether the plaintiff suffers from an unknown injury which is so serious as to indicate clearly that, if it had been known, the release would not have been signed.

Our analysis of the doctrine of mutual mistake leads us to adopt the "unknown injury" rule followed by most other jurisdictions.[7] Therefore, we think the judge erred[8] in entering

[7] We recognize our strong policy of encouraging the resolution of disputes through agreement of the parties. A release "is a jural act of high significance without which the settlement of disputes would be rendered all but impossible. It should never be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice." *Mangini* v. *McClurg, supra* at 563.

The defendants argue that adoption of the "unknown injury" rule will open the floodgates to rescission of personal injury releases on the ground of mutual mistake. We doubt that today's decision will have such a revolutionary effect. Our considered prediction is that the actual circumstances in which a plaintiff has suffered an injury which exists and yet is unknown to the parties at the time of executing the release, and where the prospect of such an unknown injury is uncontemplated by the parties during the settlement negotiations, will be exceedingly rare.

In addition, lump-sum settlement agreements entered into after November 1, 1986, will be governed to some extent by the provisions of G. L. c. 152, § 48, as amended, which allows for the reopening of certain claims, *for medical benefits only,* if the employee has suffered an unforeseen deterioration of his medical condition. Finally, a plaintiff in a personal injury case who succeeds in proving his claim of mutual mistake will nonetheless have to surmount the additional hurdles of statutes of limitations and, if judgment was entered pursuant to the settlement agreement, res judicata.

[8] While of necessity we refer to the judge's ruling as erroneous, we appreciate that he did not have the benefit of any Massachusetts decisions on this precise issue other than our 1946 opinion in *Tewksbury* and our 1917 opinion in *McCarthy*. See note 5, *supra*.

judgment for the defendants. It seems evident that the judge interpreted (we think incorrectly) our holding in *Tewksbury* to preclude rescission of a release on the basis of newly discovered injuries irrespective of whether these injuries existed before, or arose after the release was signed.[9] By application of the "unknown injury" rule, it is clear that there is a genuine factual issue presented on the record which precludes summary judgment for the defendants. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *DeVaux* v. *American Home Assurance Co.*, 387 Mass. 814, 817 (1983).

The judgment is reversed, and the case is remanded to the Superior Court for trial, where LaFleur bears the burden of proving that the industrial accident aggravated a preexisting Buerger's disease unknown to the parties, and that the parties did not intend to discharge any claims for these specific medical consequences.[10] If LaFleur prevails on his claim of mutual mistake and the settlement agreement is rescinded, he will be entitled to have his case remanded to the Industrial Accident Board.

*So ordered.*

---

[9] Citing *Tewksbury,* the judge ruled that "[e]xecuting a release to cover known injuries precludes re-opening the matter should the claimant discover additional injuries at some point in the future."

[10] Our prior decisions have indicated that the party seeking to avoid an agreement must prove mistake by "full, clear and decisive" evidence. *Kidder* v. *Greenman,* 283 Mass. 601, 613 (1933). See *Mickelson* v. *Barnet,* 390 Mass. 786, 792 (1984) (reformation of trust).