Curley, Thomas J., J.
The defendant Channel 12 News WPRI-TV (“Channel 12”) moves for summary judgment on the complaint against it because, it contends, a release signed by the plaintiff Michael Alan Crooker (“Crooker”) encompasses it, through its corporate owner, LIN TV Corporation (“LIN”). For the following reasons, the motion is ALLOWED.[1]
The undisputed facts are that on October 12, 2004, Crooker in return for $500 from LIN, “. . . release(d) .. . LIN .. . its ... subsidiaries (whether wholly owned or partially owned and whether direct or indirect) . . . of and from all . . . claims . . . whatsoever of eveiy name and nature . . . which I now have or ever had from the beginning of the world to that date . . .” (“the Release”).[2] The alleged basis for Crooker’s claim arose in June 2004, which predates the Release, and he has not disputed the assertion in Denise M. Parent’s affidavit that “Channel 12 ... is not a legal entity, it is owned and operated by [TVL Broadcasting, Inc.) [which] is a wholly owned subsidiary of LIN.” Affidavit, paragraphs 3 and 4.
Crooker’s opposition states, in pertinent part, that LIN’s motion “amounts to legal trickery by an experienced lawyer upon a pro se litigant. Plaintiff had no idea that ‘LIN Television’ encompassed not only Channel 22 [the only television station expressly named in the Release], but Channel ... 12, too. How could he know? As a layman, he knows nothing of the corporate world and the [Release] never stated what other TV stations were involved. [Channel 12] however, knew that plaintiff was suing all area broadcast media including Channels 3, 4, 5, 6, 7, 8, 10, 12, 30, 40, 61, 25, NECN, Boston Herald, Boston Globe, Springfield Republican, etc. Thus [Channel 12 has] attempted to defraud this plaintiff and accordingly, defraud this court.”[3] (Original emphasis.)[4]
But Crooker presents no facts supporting his con-clusory assertion that LIN committed any “legal trickery” by, e.g., making any false representations that induced him to agree to the Release, nor does he cite any authority for the legal argument that must flow from that circumstance for him to prevail, i.e., that LIN was obliged to reveal its ownership of media entities covered by the Release. In response to Crooker’s question about “how could he know” the extent of LIN’s media ownership, the straightforward answer is that he could simply have asked. Had he done so, and had LIN misrepresented the extent of its ownership (at least to the extent that the misrepresentation involved Channel 12), then a factual issue precluding summary judgment almost certainly would exist; there would indeed be a question of fraud in the inducement presented here. But there is no evidence that Crooker ever asked about this, and LIN had no legal obligation to volunteer the information to him. Nothing in LeB-lanc v. Friedman, 438 Mass. 592 (2001), or LaFleur v. C.C. Pierce Co., 398 Mass. 254 (1986) (cases not cited by either party), persuades me that a different result is warranted.
Channel 12’s motion for summary judgment is therefore ALLOWED.[5]

In deciding this motion, I follow the Mass.R.Civ. P. 56 standards as set forth in, e.g., O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000).

The full Release is attached to Channel 12’s summary judgment motion.

Crooker presents no evidence by affidavit or otherwise that LIN “knew” of his plans to sue these entities, although even if it did know the result here would not change.

I have decided at least two motions for summary judgment in cases brought by Crooker against other media entities (one also a subsidiary of LIN), and at least two others are before me now. It seems as though the essence of the various cases involve the re-broadcast or republication of an allegedly defamatory news report about Crooker.

I recognize, of course, that Crooker is a pro se litigant. But the substantive law and procedural rules apply to him just as they do to one represented by counsel. Cf. Commonwealth v. Mmoe, 393 Mass. 617, 620 (1987).