NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-112                                          Appeals Court

DANIEL WILSON'S CASE.

No. 15-P-112.

Suffolk.     March 22, 2016. - May 16, 2016.

Present:  Cypher, Wolohojian, & Carhart, JJ.

Workers' Compensation Act, Injuries to which act applies,
     Decision of Industrial Accident Reviewing Board, Findings
     by administrative judge, Expert opinion.


     Appeal from a decision of the Industrial Accident Reviewing
Board.


     Sean M. Beagan for the employee.
     John J. Canniff, III, for the insurer.


     CYPHER, J.  Daniel Wilson appeals from a decision of the

reviewing board (board) of the Department of Industrial

Accidents (DIA), which reversed a decision of the administrative

judge in favor of Wilson, and dismissed his claim.  We reverse

the dismissal of the claim and reinstate the decision of the

administrative judge in favor of Wilson.

Wilson worked as a heavy equipment mechanic for Southworth Milton in 2006 when he was injured while repairing a hydraulic pump in a truck. Wilson was on his stomach, lying across the transmission of the truck with both arms fully extended in front of him. While using a pry bar in an attempt to skirt the weight on the back of the ninety-pound pump, he felt a stabbing pain in his neck, upper back, and both shoulders. Approximately nine days later Wilson was treated with a cortisone shot. Wilson testified that at that time his left shoulder felt tender, although his right shoulder was much worse.

In September, 2007, surgery was performed on Wilson's right shoulder. Wilson returned to work five and one-half weeks after his surgery and, as advised by his surgeon, Dr. Peter Noordsij, relied more on his left arm to compensate for lack of use of his right arm. Wilson's left shoulder pain increased.

Wilson filed a claim for worker's compensation. Sentry Insurance Company (Sentry) settled the claim in 2008 with an approved lump sum payment of $2,500 to Wilson and an award of $5,000 for attorney's fees to Wilson's attorney.[1] See G. L.

---

[1] Before entering into the lump sum agreement, Sentry required that Wilson sign an earnings report. Sentry's attorney did not disclose to Wilson that Sentry had information that Wilson had been working and earning wages while receiving worker's compensation benefits. Once Wilson signed the earnings report, Sentry immediately threatened to charge Wilson with insurance fraud if he did not settle his case for $2,500. His employer reported him for insurance fraud, and he was prosecuted

c. 152, §§ 19, 23.  The 2008 settlement agreement specified that it covered injuries to Wilson's right shoulder, neck, and upper back.

Wilson continued to suffer bilateral shoulder pain after the lump sum award but was unable to obtain medical benefits.  In 2011, Wilson filed a claim for payment of medical benefits for treatment of his left shoulder, as well as his right shoulder, from the 2006 industrial accident.  Sentry disputed Wilson's claim, and Dr. Ralph Wolf, an impartial medical examiner[2] (IME), was appointed to examine Wilson.  Dr. Wolf provided a written report indicating that Wilson's left shoulder injury "was secondary" to the industrial accident and noting that "the patient did not report left shoulder pain . . . until one year post injury."  In his deposition, Dr. Wolf testified that his opinion was based on the history provided by Wilson.  In his deposition on cross-examination Dr. Wolf testified that:

> "The patient, if I understood correctly, felt he had no other explanation for his shoulder pain on either side, except the 2006 work injury.  The reason I ended the paragraph the way I did was that it's unusual for [someone] not to report, or for someone not to have noticed that there was pain in the opposite shoulder within a few days of the 2006 injury.  In fact, that it was 2007 before he mentioned to me about this, it makes you think that maybe the left shoulder had evolved from some other source."

and found guilty by a jury.  The conduct of Sentry's attorney and the validity of the lump sum agreement is not before us.

[2] Dr. Wolf was also the IME in Wilson's original claim.

Wilson testified at the hearing before the administrative judge that, at the time of the accident, he had pain in both shoulders, but that the pain in his right shoulder was worse than the left shoulder and that, as time went on, the pain in his left shoulder began to increase. In addition, the administrative judge had before him ten exhibits (including the Sentry nurse manager note), Dr. Wolf's written opinion, and depositions of Dr. Wolfe and Dr. Noordsij. The administrative judge stated in his findings that he relied on the credible testimony of Wilson and the persuasive medical opinions of Dr. Wolf.

The administrative judge found that Wilson's left shoulder injury was causally related to the industrial accident in 2006 and ordered Sentry to pay all reasonable and necessary medical expenses. See G. L. c. 119, §§ 13, 30. In making findings, the administrative judge may give decisive weight to the credible testimony of the employee and also may weigh any separate medical evidence. See Dalbec's Case, 69 Mass. App. Ct. 306, 314-315 (2007). "Findings of fact, assessments of credibility, and determinations of the weight to be given the evidence are the exclusive function of the administrative judge." Pilon's Case, 69 Mass. App. Ct. 167, 169 (2007). The board's decision fails to recognize that credibility findings made by the administrative judge "are to be considered final by both the

reviewing board and an appellate court." Carpenter's Case, 456 Mass. 436, 441 (2010).

We review the board's decision in accordance with the standards set forth in G. L. c. 30A, § 14(7), governing appeals from final administrative agency decisions, but "we do not review whether the board's decision was supported by substantial evidence." Wadsworth's Case, 461 Mass. 675, 679 (2012). See G. L. c. 152, § 12(2). We may reverse or modify the board's decision where it is based on an error of law, or is arbitrary, capricious, or otherwise not in accordance with law. See G. L. c. 30A, § 14(7)(c),(g). Similarly, the board may reverse the decision of an administrative judge only where it is "beyond the scope of his authority, arbitrary or capricious, or contrary to law." G. L. c. 152, § 11C, as amended by St. 1991, c. 398, § 31. See Hick's Case, 62 Mass. App. Ct. 755, 763 (2005). Thus, where the board reverses an administrative judge's decision based on a finding of fact, we must determine "whether the board was arbitrary or capricious in concluding that the administrative judge was arbitrary or capricious." Wadsworth's Case, supra at 679.

The board concluded that Dr. Wolf provided two irreconcilable opinions and that the administrative judge mischaracterized his medical opinion. According to Sentry, the board was correct because the administrative judge cannot select

which of the testimony to credit.  The problem for Sentry, however, is that Dr. Wolf did not provide two irreconcilable opinions.  Although Dr. Wolf expressed uncertainty in light of the length of time that he believed had passed between the initial injury and the claim for injury to Wilson's left shoulder, such concern does not create two contradictory opinions.  Furthermore, it is clear from Dr. Wolf's testimony that he did not realize that Wilson had, in fact, complained of left shoulder pain at his first contact with the nurse practitioner, and that this complaint was documented.  When the doctor's testimony is read as a whole and in context with the other evidence there is no contradiction.

The board's focus on the fact that Dr. Wolf testified in his deposition that what he believed to be a delay in reporting the left shoulder injury caused him some concern does not change what Dr. Wolf ultimately set forth in his written report.  The testimony of a medical expert should be considered as a whole. See Duggan's Case, 315 Mass. 355, 358 (1944).  See also Nason, Koziol, & Wall, Workers' Compensation § 17.24 (3d ed. 2003).

The board also ignores Wilson's testimony and, significantly, the August 26, 2006, record entry of the nurse case manager, Mara Carofaniello, who noted that Wilson was complaining of bilateral shoulder pain in the days following the accident, as well as the subsequent references to left shoulder

pain in both Wilson's physical therapy notes in September, 2007, and in the records of Wilson's orthopedic surgeon, Dr. Noordsij, in June, 2008.[3]  There is no requirement that the causal connection be shown by expert testimony alone.  See McAuliffe v. Metcalfe, 289 Mass. 67, 69 (1935).

The administrative judge acted within his discretion when he found that a causal relationship existed between the industrial accident and Wilson's left shoulder injury, where he found Wilson to be credible in his testimony as to the nature and cause of his left shoulder injury.  In addition, Dr. Wolf, the IME, testified that he had based his opinion as to causal relationship in his written report on the history provided by Wilson.  An employee is not required to exclude all other possible causes, and recognition by the IME of the possibility of other causes does not destroy the probative force of his testimony.  See Blanchard's Case, 277 Mass. 413, 415 (1931).  See generally Nason, Koziol, & Wall, Workers' Compensation § 17.24 & n.2 (3d ed. 2003).

Decision of reviewing board
reversed.

---

[3] On June 17, 2008, Dr. Noordsij noted that Wilson complained of "left shoulder pain."