LAMPORT'S CASE, 101 Mass. App. Ct. 26

 
 MARY M. LAMPORT'S CASE.

101 Mass. App. Ct. 26
 January 14, 2022 - April 28, 2022

Court Below: Industrial Accident Reviewing Board
Present: Milkey, Massing, & Hershfang, JJ.

 

No. 21-P-622.

Department of Industrial Accidents. Workers' Compensation Act, Decision of Industrial Accident Reviewing Board, Insurer, Lump-sum settlement.

The reviewing board of the Department of Industrial Accidents correctly concluded that a lump-sum agreement between the employee and the insurer for injuries to the employee's right shoulder and neck arising out of an industrial accident barred further recovery for different known injuries arising out of the same accident, where the employee was aware of the different injuries (i.e., to her left shoulder) at the time she entered into the lump-sum agreement but failed to specifically reserve or exclude the left shoulder injuries from the agreement's scope. [28-31] 

APPEAL from a decision of the Industrial Accident Reviewing Board. 

 John J. Sheehan for the employee.

 Robert S. Martin for the insurer.

 MASSING, J. In this appeal from a decision of the reviewing board of the Department of Industrial Accidents (board), Mary M. Lamport seeks compensation for injuries to her left shoulder caused by an industrial accident. Lamport previously entered into a lump-sum agreement with Safety National Casualty Corporation (insurer) for injuries to her right shoulder and neck arising out of the same accident. An administrative judge determined that the insurer was liable for Lamport's left shoulder injuries, but the board reversed, concluding that the lump-sum agreement barred further recovery for different known injuries arising out of the same accident. We affirm.

 Background. Lamport worked for Draper Place as a resident services assistant at an assisted living facility. On April 10, 2016, while lifting a resident out of a wheelchair, she experienced severe pain in her right shoulder and neck. In early February 2017, she underwent arthroscopic surgery to repair her right rotator cuff and related right shoulder injuries.

 Page 27 

 Prior to this procedure, because Lamport was favoring her injured right shoulder, she began to experience pain in her left shoulder. Indeed, one month before her right shoulder surgery, Lamport complained to her orthopedic surgeon of persistent left shoulder pain. The surgeon ordered a magnetic resonance imaging (MRI) scan of the left shoulder, which was conducted a day or two before the right shoulder surgery. Lamport continued to experience left shoulder pain during and after recovery from the right shoulder surgery.

 The insurer accepted liability for the right shoulder injuries and related treatment, and about one year after the surgery, on February 13, 2018, the parties entered into a lump-sum agreement, which was memorialized on a completed Department of Industrial Accidents (DIA) form 117. Based on Lamport's age and life expectancy, the insurer agreed to pay her $24,500, with an additional $5,500 allocated for her attorney's fees. The date of injury was specified as "4/10/2016 and all dates of employment," and the diagnosis was specified as "[r]ight [s]houlder [r]otator [c]uff [t]ear; S/P [r]ight [s]houlder [a]rthroscopy; [c]ervical [s]prain/[s]train and [e]xacerbation of [p]re-[e]xisting [c]ervical [d]egenerative [d]isc [d]isease." The parties checked a box on the form stating that liability had been established and that "this settlement shall not redeem liability for the payment of medical benefits and vocational rehabilitation benefits with respect to such injury" -- in other words, the insurer remained liable for future medical payments with respect to the specified injuries. In addition to the lump sum, the insurer also agreed to pay "all outstanding reasonable and related medical bills incurred as of this date."

 As to any other benefits Lamport could expect to receive, the agreement stated, "The parties understand and agree that the herein proposed lump[-]sum settlement closes out any claim that [the] [e]mployee may have under [G. L. c. 152,] §§ 28 and 36." [Note 1] In a block just above Lamport's signature, the form, as completed, stated, "This payment is received in redemption of the liability of all weekly payments now or in the future due me under the Workers' Compensation Act, for all injuries received by Mary Lamport on or about 04/10/2016 and all dates of employment while in the employ of Draper Place" and that "I am fully 

 Page 28 

satisfied with and request approval of this settlement." As the administrative judge noted, "[T]he lump sum presented and approved was devoid of any reservation, restriction, exclusion and/or identification of potential for the [e]mployee's newly claimed 'left shoulder impingement injury.'"

 Following the settlement, Lamport continued to see her orthopedic surgeon for (1) postoperative care for her right shoulder and (2) her left shoulder pain. A second MRI of her left shoulder was conducted in April 2018, and she was diagnosed with a left rotator cuff tear requiring arthroscopic surgery. About one year after entering into the lump-sum agreement, Lamport filed a second claim with the DIA, this time for coverage of medical expenses to treat and repair her left shoulder. The insurer opposed the claim on the ground that the lump-sum agreement barred recovery for additional injuries arising out of the same accident.

 The administrative judge found that the left shoulder injuries were caused by the April 10, 2016, accident and, rejecting the insurer's argument with respect to the lump-sum agreement, ordered the insurer to pay Lamport medical benefits for "arthroscopic left shoulder surgery together with the necessary pre[-] and post-operative medical care and rehabilitation." The board reversed. Applying the board's precedent, the board held that because Lamport was aware of the left shoulder injuries at the time she entered into the lump-sum agreement, and did not specifically reserve or exclude the left shoulder injuries from its scope, further recovery was barred. Lamport appeals from that decision.

 Discussion. Under G. L. c. 152, § 12 (2), we review the decision of the board in accordance with G. L. c. 30A, § 14 (7) (a)-(d) and (f)-(g). See MacDonnell's Case, 82 Mass. App. Ct. 196, 201 (2012); Dalbec's Case, 69 Mass. App. Ct. 306, 312 (2007). "We may reverse or modify the board's decision where it is based on an error of law, or is arbitrary, capricious, or otherwise not in accordance with law." Wilson's Case, 89 Mass. App. Ct. 398, 400 (2016). "Similarly, the board may reverse the decision of an administrative judge only where it is 'beyond the scope of his authority, arbitrary or capricious, or contrary to law.'" Id., quoting G. L. c. 152, § 11C, as amended by St. 1991, c. 398.

 The decisive question in this appeal is whether the lump-sum settlement of Lamport's claim with respect to her right shoulder injuries foreclosed her ability to file a claim with respect to her 

 Page 29 

left shoulder injuries arising out of the same occurrence. The effect of lump-sum settlements on future claims is well settled by the board's previous decisions over many decades, which the board summarized as follows:

"An employee is precluded from filing a claim for known but unspecified injured body parts stemming from an industrial accident known prior to a lump[-]sum settlement. . . . Once an administrative judge has approved an agreement, payment made by the insurer is a full settlement of all compensation due [to] the employee under the [Workers' Compensation] Act unless a benefit is specifically reserved in the settlement papers. If the parties intend to reserve the right to claim an injury or body part, they must specifically state so in the lump[-]sum settlement."

See LaFleur v. C.C. Pierce Co., 398 Mass. 254, 257 (1986) ("Under G. L. c. 152, § 48, the parties to a worker's compensation claim may enter into a lump-sum agreement in redemption of the employer's liability for medical expenses and benefits. Once approved by the board, this agreement precludes reopening of the case except upon a showing of fraud or mutual mistake"); Mueller's Case, 48 Mass. App. Ct. 910, 910 (1999), citing Martin v. Ring, 401 Mass. 59, 63 (1987) (permanent loss of function claim "barred under principles of claim preclusion because the claimed loss of function was known at the time the employee entered into a lump[-]sum settlement . . . with the insurer").

 Lamport does not argue that she was unaware of her left shoulder injuries at the time she entered into the lump-sum agreement. Indeed, a full year before entering into the agreement, she started experiencing pain in her left shoulder and even underwent an MRI scan. The administrative judge found that Lamport's counsel and the insurer "had knowledge, or should have had knowledge, of the [e]mployee's left shoulder pain and its potential causal relationship to the work injury of April 10, 2016," at the time they finalized the lump-sum agreement. Despite this knowledge, the agreement did not mention the left shoulder injuries, and Lamport did not reserve the right to claim benefits related to her left shoulder injuries at a later date. [Note 2] While the administrative judge believed that the agreement's silence 

 Page 30 

with regard to the left shoulder injuries meant that Lamport could file a new claim, the board held that the omission compelled "the opposite conclusion from that reached by the judge" -- that is, the lump-sum agreement settled all claims arising out of the April 10, 2016, industrial accident and extinguished any further recovery.

 Lamport makes no argument that the board's understanding of its precedent regarding the preclusive effect of lump-sum settlements was erroneous as a matter of law. Rather, her sole argument that the board erred in reversing the decision of the administrative judge is based on this court's decision in Wilson's Case. There, as here, after the employee entered into a lump-sum agreement to settle a claim for injuries to his right shoulder and neck, he brought a second claim for injuries to his left shoulder arising out of the same industrial accident. See Wilson's Case, 89 Mass. App. Ct. at 399. The only contested issue in Wilson's Case, however, was a factual one: whether the left shoulder injuries were causally related to the accident. See id. at 400-401. This court held that because the board failed to defer to the administrative judge's credibility findings, the board erroneously reversed the administrative judge's factual determination of causation. See id. at 400, quoting Carpenter's Case, 456 Mass. 436, 441 (2010) ("The board's decision fails to recognize that credibility findings made by the administrative judge 'are to be considered final by both the reviewing board and an appellate court'").

 Wilson's Case does not help Lamport because the insurer in that case did not raise the lump-sum agreement as a bar to recovery and, consequently, the effect of the agreement was not before the court. See id. at 399 n.1 (noting irregularities preceding lump-sum agreement and that "the validity of the lump[-]sum agreement is not before us"). [Note 3] Here, by contrast, the insurer timely raised the lump-sum agreement as a bar at the hearing before the administrative judge. The board did not err or exceed 

 Page 31 

its authority in reversing the administrative judge's decision as "contrary to law." G. L. c. 152, § 11C.

Decision of the reviewing board affirmed.

FOOTNOTES
[Note 1] These provisions refer to claims for injuries caused by "serious and wilful misconduct" of the employer, G. L. c. 152, § 28, and specific injuries such as loss of eyesight, loss of hearing, and amputation or total loss of use of a hand, foot, arm, or leg, G. L. c. 152, § 36. 

[Note 2] The parties have not addressed whether they were required to use DIA form 117 to "perfect" their lump-sum agreement under the terms of G. L. c. 152, § 48. In any event, Lamport makes no argument that the form prevented her from reserving a claim with respect to her left shoulder injuries. Indeed, the form included an open section for a narrative description of the "history of the case" and "why the settlement [was] in the employee's best interest" and permitted the parties to "attach a separate sheet if necessary." 

[Note 3] The board's decision underlying Wilson's Case, which noted the insurer's waiver of the lump-sum defense, was reported in Wilson v. Southworth Milton, Inc., 28 Mass. Workers' Comp. Rep. 195 (2014). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.