WILLIAM N. LEE & another[1] vs. SALVATORE
DATTILO & another[2]
(and a companion case[3]).

Nos. 87-633 & 87-836.

Middlesex. March 11, 1988. — July 6, 1988.

Present: ARMSTRONG, KAPLAN, & DREBEN, JJ.

Contract, Sale of real estate, Performance and breach. Real Property, Record title. District Court, Appellate Division.

Provisions in a printed form of agreement for the purchase and sale of a house, including the seller's promise to convey "good and clear record and marketable title" to the property, implicitly required that the buyer have an opportunity to record the deed before his funds were delivered to the seller, with the result that, where the prospective buyer appeared at the appointed time at the appropriate registry of deeds, willing and able to tender the purchase money subject only to the recording of the deed, but recording was impossible due to the late hour of the day, the seller was not entitled to declare the buyer in breach of the agreement and refuse to go forward, but was required to accept a reasonable solution, either to postpone the closing until the next day or to allow the funds to be held in escrow until the deed was put on record. [186-190]

An appeal did not lie from a decision of the Appellate Division vacating the judgment of a District Court in a civil action and remanding the case for a new trial. [190]

CIVIL ACTIONS commenced in the Concord Division of the District Court Department on October 19, 1983, and December 13, 1983, respectively.

[1] Beverly L. Esber. Although there are two plaintiffs they are sometimes collectively referred to as the buyer.

[2] Dorothy C. Dattilo. Although there are two defendants, we sometimes use the word "seller" to refer to Salvatore Dattilo only and sometimes to the defendants collectively.

[3] Stephen I. Owren vs. Salvatore Dattilo and Dorothy C. Dattilo, an action by the broker for a commission. Originally, there were two brokers but this appeal only concerns Owren.

The cases were heard by *Edward M. Viola,* J.

*David P. Dwork* for William N. Lee & another.

*Mark L. Murphy* for Stephen I. Owren.

*Michael D. Greenberg* for Salvatore Dattilo & another.

DREBEN, J.   A purchase and sale agreement drawn by a broker on a Greater Boston Real Estate Board form for a residence in Winchester contained a number of commonplace provisions: the deed shall convey a good and clear record and marketable title; buyer shall be entitled to an inspection of premises prior to delivery of the deed; and time is of the essence. The present dispute arose because the broker, the seller's agent, selected 4:00 P.M. as the time for the closing at the Middlesex South District Registry of Deeds on October 6, 1983. The parties met at the registry, the seller arriving "shortly after" 4:00 P.M. Although it was then too late to record the deed, the seller refused to let the funds be held in escrow until the deed could be recorded or to postpone the closing to the following morning. He insisted that he would not deliver the deed unless he received the funds. These actions for damages by the buyer and the broker ensued.

1. *Action by the buyers.* A judge of the District Court found that the sellers were in breach of the agreement and ordered the deposit returned to the buyers and also awarded damages. On appeal, the Appellate Division disagreed and upheld the sellers' claim that they were entitled to a ruling that "the evidence is not sufficient to warrant a finding for the [buyers]." We reverse the order of the Appellate Division.

For the most part, the facts are not in dispute. We rely on the findings of the District Court judge, which we consider a part of the record before us.[4]

The buyers came from California and had no knowledge of the business hours of the registry "nor of the usual business practice that mortgage attorneys would not deliver the purchase monies to the seller until after the recording of the deed." The seller, on the other hand, had been a house builder for twenty

---

[4] Although not technically incorporated in the defendants' draft report, we treat the findings as included therein. See Dist.Mun.Cts.R.Civ.P. 64(c)(2) (1975).

years and since 1962 had purchased and sold five houses. Based on the seller's background and testimony, the judge found that he was "familiar with conveyancing in Middlesex County at the Cambridge Registry of Deeds." As indicated earlier, the agreement of purchase was drawn by the broker, although the parties had made some changes. No attorneys were involved.

A few days prior to the closing, the attorney for the buyers' lending bank called the broker and explained that, if the closing were to take place on October 6 after 3:00 P.M., the deed would not go on record that day and the funds could not be paid to the seller. It was suggested that the closing take place at 11:00 A.M.

About 9:00 A.M. on October 6 the buyer went to inspect the premises. The broker, who was at the sellers' house, informed the buyer that the sellers' furniture was still there but suggested that the buyer inspect the house anyway. The buyer declined, returned at 2:00 P.M. but found the movers still in evidence. The inspection took place at 2:50 P.M.

In the meantime, the seller had gone to the registry at 11:00 A.M. and was upset because no one else was there. When he returned, the broker told him that the passing might not take place until 4:00 P.M. and that he probably would not get his funds. He said he wanted his money.

The buyers arrived at the registry about 3:30 P.M. and, until 3:50 P.M. reviewed the note, mortgage and related papers with the attorney for the bank. "Shortly after 4:00 P.M.," the seller arrived, and the broker arrived about 4:20 P.M. The seller refused to sign the deed unless the funds were delivered, and the broker refused to return the deposit to the buyers or to the seller.

The bank's lawyer offered to have the funds held in escrow by the sellers' broker, or by his attorney, if he had one, or by herself until the deed was put on record the next morning. She told the seller that the money was there, that she had two bank checks, but that after 4:00 P.M. it was "physically impossible to pass papers as she could not record the deed."

The buyers remained willing to go ahead with the purchase until a week later (October 13, 1983), the day their furniture was to arrive from California. The seller refused, taking the position that the buyers, by withholding the money, were at fault and that he had not broken the agreement.

The Appellate Division, relying on the premise that a buyer's promise to pay and a seller's promise to convey are "mutually dependent" and that "simultaneous performance was contemplated," *Limpus* v. *Armstrong*, 3 Mass. App. Ct. 19, 22 (1975), held that the evidence, "particularly the express terms of the parties' written agreement, does not permit a finding" that the sellers had broken the agreement. Pointing to the provision that time was of the essence, that court concluded that it was "the sellers' prerogative to insist upon compliance with this contract clause and to reject the buyers' attempt to extend the time for performance until the next business day." [5]

Construing the agreement as an integrated whole, giving reasonable effect to all of its provisions, we hold that implicit in the agreement was a requirement that the buyer would have an opportunity to record the deed prior to handing over bank checks or certified funds. A number of provisions support this result. First, and central to the agreement, is the provision that the buyer is to receive a good and clear "record" and marketable title. "A good and clear record title free from all incumbrances means a title which on the record itself can be again sold as free from obvious defects, and substantial doubts. . . . A 'good marketable title'. . . is not the same as 'a good and clear record title.' The first . . . [may be] established by evidence independently of the record. The second rests on the record alone, which must show an indefeasible unencumbered estate." *O'Meara* v. *Gleason*, 246 Mass. 136, 138 (1923). See *Coons*

---

[5] In its recital of the facts, the panel of the Appellate Division stated that the seller had arrived at 4:00 P.M., rather than "shortly" thereafter, as the District Court judge had found. Although the District Court judge's finding is controlling, the discrepancy is of no moment because, even if the seller had arrived at 4:00 P.M., it would have been too late to record the deed. It should, nevertheless, be noted that the District Court judge found that the seller had not complied with the exact time specified in the agreement.

v. *Carstensen*, 15 Mass. App. Ct. 431, 433 (1983). Unless the buyer is given an opportunity to examine all the papers on record at a time when the deed from the seller can be recorded, the buyer cannot ascertain that there is a clear record title.

Under the agreement, the "acceptance of a deed . . . shall be deemed to be a full performance and discharge of every agreement and obligation herein contained . . . , except such as are, by the terms hereof, to be performed after the delivery of [the] deed." Thus, the period for voicing any objections to the title was limited by the agreement to the time before payment. To be protected against any unrecorded instruments or recordings made prior to the recording of the deed to the buyer, the buyer must be able to inspect the records immediately prior to the recording of the deed.[6] See G. L. c. 183, § 4.

Another provision of the agreement also lays stress on the importance of recording at a closing. The seller is given the right "at the time of delivery of the deed [to] use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed."[7] That the closing is to take place at the registry is also significant.

We next look at what occurred in light of our construction of the contract as requiring that the buyer be given an opportunity to record the papers. The buyers timely appeared at the registry willing and able to tender the funds, subject only to recording the papers — a physical impossibility at that time because of the closing of the registry. In such circumstances, we hold that the seller was not free to declare a breach by the buyer and was required to accept a reasonable solution, e.g.,

---

[6] We do not mean that the buyer must record, but we construe the agreement as requiring the buyer to be given the opportunity to record immediately after examining the registry records.

[7] We note that the discharge of the seller's mortgage also could not be recorded, but view the inability to record the buyers' deed as a far more serious matter. The amount needed for the discharge of the mortgage was ascertainable and could be withheld at the closing. The inability to have access to the registry for an opportunity to record the deed, however, left open the possibility of unknown and unquantified encumbrances.

postpone the closing until the next morning or allow the funds to be held in escrow. Accordingly, we agree with the District Court judge that the seller was in breach by rejecting either alternative. The judgment of the District Court judge is to be reinstated.

2. *Action by the broker.* In the companion action, the seller again claimed he was not in breach of the agreement and counterclaimed for damages from the broker. Among other grounds, he alleged that the failure to close was occasioned by the broker's negligence and failure to exercise a duty of fiduciary care.[8] The District Court judge found that a commission was due. The Appellate Division reversed, vacated the finding for the broker on the sellers' counterclaim, and remanded that claim for a new trial.

As we do not consider our holding in part 1 of this opinion conclusive on the outcome of the sellers' counterclaim against the broker,[9] we follow the usual rule that, where a retrial in the District Court is ordered by the Appellate Division, the decision is interlocutory, and an appeal does not lie. *Nesco Aluminum Sales* v. *Scott*, 385 Mass. 1002 (1982). *Cassidy* v. *Newton*, 386 Mass. 1002 (1982). "The result of the new trial may be such as to obviate the need for an appeal." *Nesco Aluminum Sales* v. *Scott*, 385 Mass. at 1002.

In case number 830740 (action by the buyer against the seller) the order of the Appellate Division is reversed and the judgment of the District Court judge is reinstated. In case number 830891 the appeal is dismissed.

*So ordered.*

---

[8] Other counterclaims of the seller were severed and are not here involved.

[9] If not for the counterclaim, the broker would, because of our holding in part 1, be entitled to a commission.